ILLINOIS STATE CHAMBER OF COMMERCE, Petitioner, *v.* THE POLLUTION CONTROL BOARD, Respondent.—COMMONWEALTH EDISON COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD, Respondent.—ASSOCIATION FOR MOTOR SPORTS OF ILLINOIS *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD, Respondent.

First District (2nd Division)   Nos. 59451, 59463, 59470 cons.

Opinion filed June 14, 1977.

Martin, Craig, Chester & Sonnenschein, of Chicago (Richard J. Kissel and Eugene W. Beeler, Jr., of counsel), for petitioners Illinois State Chamber of Commerce and Association for Motor Sports of Illinois.

Isham, Lincoln & Beale, of Chicago (Richard G. Ferguson, Paul T. Ruxin, and Mark H. Virshbo, of counsel), for petitioner Commonwealth Edison Company.

William J. Scott, Attorney General, of Chicago (Richard W. Cosby, Russell R. Eggert, George Wm. Wolff, and Larry B. Blackwood, of counsel), for respondent.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

In this case, we consider three petitions for direct appellate review of regulations promulgated by the Illinois Pollution Control Board (PCB) pursuant to sections 29 and 41 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1975, ch. 111½, pars. 1029, 1041) and Supreme Court Rule 335 (Ill. Rev. Stat. 1975, ch. 110A, par. 335). The regulations establish standards for the control of noise pollution from stationary noise sources. (See proceedings of the Illinois Pollution Control Board, No. R72—2.) Because of the common issues presented by these petitions, the cases have been consolidated in this court for argument and opinion.

In essence, there are four issues to be resolved: (1) whether petitioner Illinois State Chamber of Commerce (Chamber) has standing to bring its petition; (2) the adequacy of the published notices of public hearings on the proposed regulations; (3) whether certain of the regulations, as promulgated, are an excess of PCB's authority under the Act; and (4) whether certain of the regulations, as promulgated, are arbitrary, capricious, and unreasonable.

## I.

The scheme and scope of these regulations, as well as the history of their development, have been previously discussed in detail by our supreme court in *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 319 N.E.2d 782, and by the fifth district of this court in *Shell Oil Co. v. Pollution Control Board* (5th Dist. 1976), 37 Ill. App. 3d 264, 346 N.E.2d 212. We need not repeat that discussion here. We

believe that those two cases are dispositive of the principal issues presented by these petitioners.

## II. Standing

PCB contends that the Chamber lacks standing under the Act to seek review of PCB regulations.[1] The Environmental Protection Act sets forth its own standing requirements. Section 29 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1029) provides:

> "Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under Section 41 of this Act."

Section 41 (Ill. Rev. Stat. 1975, ch. 111½, par. 1041) provides, in relevant part:

> "Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any person adversely affected by a final order or determination of the Board may obtain judicial review, * * * pursuant to the provisions of the 'Administrative Review Act,' * * *. Review of any rule or regulation promulgated by the Board shall not be limited by this section but may also be had as provided in Section 29 of this Act."

The Chamber in its brief asserts it is adversely affected by these regulations in its representative capacity for business and industry and as a citizen of Illinois. The PCB suggests that the record may not support the Chamber's assertion. As PCB assumed that the Chamber's claim is supported by the record, so do we for purposes of resolving this point. It is also to be noted that the Chamber participated as a party in the proceedings before the PCB.[2]

PCB does not argue that the Chamber is not a "person" within the meaning of section 29 (see *Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 294 N.E.2d 259), but contends that section 29 limits standing to those "persons" whose "legal rights" (defined by the PCB as rights arising out of contract, those protected against tortious invasion, and those founded upon a statute which confers a privilege) are "adversely affected" and that the Chamber is not adversely affected by its noise pollution regulations. PCB cites

[1] A similar question of the standing of the Association for Motor Sports of Illinois might have been raised. However, the PCB did not challenge the Association's standing. This is reasonable in view of the fact that, in No. 59470, the Association is only one of seven petitioners. The other six include three drag racing corporations, and a number of automotive and motorcycle racing concerns, organizations for which there appears to be no question as to standing.

[2] In *Illinois Telephone Association v. Illinois Commerce Com.* (1977), 67 Ill. 2d 15, 364 N.E.2d 63, our supreme court, in discussing the question of standing on appeal, pointed out the unfairness of allowing an association to intervene as a party in the administrative hearing and then attempt to deny it a statutory right of appeal.

*Dolnick v. Redmond* (1st Dist. 1972), 4 Ill. App. 3d 1037, 283 N.E.2d 113, and *Swain v. County of Winnebago* (2d Dist. 1969), 111 Ill. App. 2d 458, 250 N.E.2d 439, in support of its position. However, both of those cases are distinguishable because neither involved a statute setting forth standing requirements such as we now consider.

In response to these arguments, the Chamber contends that the unfavorable business climate which will result in Illinois from the enactment of poorly conceived noise pollution regulations will cause it to lose the financial support of those of its members who choose to relocate in other states, as well as the financial support of businesses which choose not to locate new facilities in Illinois as a result of the regulations. This is the "adverse effect" upon which the Chamber bases its standing.

While the supreme court raised the question of standing in the *Coal Operators* case (59 Ill. 2d 305, 308), it nevertheless decided the case on its merits. Although the court declined to discuss the issue because it had not been raised, it can be urged that by noting the issue and then proceeding to discuss the merits of the case, the court was not troubled by the standing of the unincorporated association of 11 Illinois coal mining companies who challenged the regulations.

■■ We think that in challenging regulations of this type, a liberal construction should be applied to the standing requirements of section 29. This it seems is consistent with the legislative scheme providing for judicial review of PCB regulations prior to the initiation of enforcement proceedings.

■■ We conclude that the Chamber, as a representative of business and industry in the State of Illinois, has standing to seek review of these regulations.

### III. Notice

The Association for Motor Sports of Illinois (Association) contends that the published notices of public hearings before the PCB prior to the adoption of the proposed noise regulations were insufficient as a matter of law. We have thoroughly reviewed the excerpts of record and exhibits submitted by the parties. It is to be noted that the Association did in fact participate in the public hearings before the PCB, and that as a result of that participation, several modifications were made in the regulations to accommodate the concerns expressed by the Association's representatives. We find no merit in this argument.

### IV. Excess of Statutory Authority

The Association and the Chamber contend that Rule 102 of the regulations (Prohibition of Noise Pollution) exceeds the regulatory authority of the PCB as defined and limited by the Act. Commonwealth

Edison (Edison) contends that Rule 207 (Prominent Discrete Tones) is similarly defective.

Rule 102 provides:

> "No person shall cause or allow the emission of sound beyond the boundaries of his property so as to cause noise pollution in Illinois, or so as to violate any provision of this Chapter or the Illinois Environmental Protection Act."

Both the Association and the Chamber contend that because Rule 102 establishes two potential violations (one for "noise pollution" and one for violation of PCB regulations), it prohibits sounds *not* prohibited by section 24 of the Act, and that the prohibition of "noise pollution in Illinois" was not within the range of areas authorized by section 25 of the Act.

Section 24 (Ill. Rev. Stat. 1975, ch. 111½, par. 1024) reads:

> "No person shall emit beyond the boundaries of his property any noise that unreasonably interferes with the enjoyment of life or with any lawful business or activity, so as to violate any regulation or standard adopted by the Board under this Act."

Section 25 (Ill. Rev. Stat. 1975, ch. 111½, par. 1025) provides, in relevant part:

> "The Board shall, * * * categorize the types and sources of noise emissions that unreasonably interfere with the enjoyment of life, or with any lawful business, or activity, and shall prescribe for each such category the maximum permissible limits on such noise emissions."

Edison's objection deals with Rule 207, which sets lower permissible maximum emission limits for sounds defined as "prominent discrete tones."[3] Edison contends that Rule 207 prohibits not only those prominent discrete tones which "unreasonably interfere" with the enjoyment of life or with any lawful business or activity, but also many such tones which are completely inaudible and which could thus never be subjectively annoying to any listener.

■■ In addition to the above arguments, all of the parties complain that the regulations prohibit noise which either interferes with the enjoyment of life, etc., *or* violates PCB regulations. The parties contend that the Act prohibits only noises which are *both* an unreasonable interference *and* which violate PCB regulations. The Association and the Chamber object that under Rule 102, it is possible for a noise source to be

---

[3] The electrical transformer units operated by Edison emit such tones, which the briefs have also described as "pure" tones, as opposed to "wide band" tones. The PCB, in a written opinion published with the regulations, found these tones subjectively more annoying when audible at certain levels above surrounding background sounds, and thus requiring greater restriction.

in full compliance with the numerical limits set by the regulations and still be liable for committing "noise pollution." Edison maintains that the General Assembly, in stating its policy with respect to the regulation of noise pollution in section 23 of the Act[4] (Ill. Rev. Stat. 1975, ch. 111½, par. 1023), suggested a definition for the words "unreasonable interference" when it used the term "public nuisance," and that because most prominent discrete tones are inaudible, infrequently annoying, and would not constitute a public nuisance, they are not prohibited by the Act.

All of the above arguments (except with respect to their specific application to the prominent discrete tone rule) have been addressed by the supreme court in the *Coal Operators* case and by the fifth district of this court in the *Shell Oil* case. In *Coal Operators*, the court interpreted Rule 102 as prohibiting emissions that unreasonably interfere with life or activities whether they violate section 24 of the Act generally *or* a specific PCB regulation. (59 Ill. 2d 305, 309.) Faced with a similar set of arguments in *Shell Oil*, the fifth district cited *Coal Operators* as controlling and upheld the regulations. 37 Ill. App. 3d 264, 268.

This analysis is equally applicable to the prominent discrete tone rule of Rule 207. Based on the evidence before it, the PCB found that prominent discrete tones are subjectively more annoying than other sounds, and that special regulation was required. Edison's argument is, in effect, that the PCB reached an incorrect conclusion. For purposes of the question of PCB's *authority* to enact such a rule, however, we must assume that the PCB reached the correct conclusion. Assuming that prominent discrete tones are in fact subjectively more annoying, Rule 207 is clearly within the statutory mandate to regulate sounds which "unreasonably interfere with the enjoyment of life, or with any lawful business or activity."

We conclude that neither rule exceeds the authority of the PCB under the Act.

## V. Scope of Review

The parties have devoted a considerable portion of their briefs to the argument that the PCB noise pollution regulations are invalid because they are contrary to the manifest weight of the evidence. However, the *Coal Operators* case clearly established the principle that the regulations of the PCB will not be overturned unless they are clearly arbitrary,

---

[4] Section 23 provides as follows:

"The General Assembly finds that excessive noise endangers physical and emotional health and well-being, interferes with legitimate business and recreational activities, increases construction costs, depresses property values, offends the senses, creates public nuisances, and in other respects reduces the quality of our environment.

It is the purpose of this Title [Title VI of the Act, entitled "Noise"] to prevent noise which creates a public nuisance."

capricious, or unreasonable. Furthermore, the supreme court clearly stated that these regulations are *not* "clearly arbitrary, unreasonable, or capricious." 59 Ill. 2d 305, 310.)

It is clear that the burden of establishing the invalidity of these regulations is on the petitioners (*Shell Oil Co. v. PCB*, at 272) and that that burden is very high. The PCB, in promulgating regulations, is exercising a quasi-legislative function and not a quasi-judicial function. (*Shell Oil Co. v. PCB*, at 270-71.) Because administrative agencies are inherently more qualified to decide technical problems, objections to said regulations must show that the regulations are clearly arbitrary, capricious, or unreasonable.

The Association contends that the PCB failed to consider any of the criteria set forth in sections 25 and 27 of the Act[5] (Ill. Rev. Stat. 1975, ch. 111½, pars. 1025 and 1027), especially the criteria of technical feasibility and economic reasonableness. The Chamber contends that the regulations are not technically feasible or economically reasonable and that the PCB failed to make specific findings of the facts it considered in arriving at a contrary conclusion, a requirement allegedly implicit in the Act. The Chamber also contends that PCB failed to weigh the benefits to be achieved from noise regulation against the economic burden of compliance, as allegedly required under section 25 of the Act,[6] and that it considered only the effects of noise on receivers. Edison contends that the prominent discrete tone rule (Rule 207) is without any evidentiary support in the record, and that it is neither technically feasible nor economically reasonable for it to either measure sound emissions from each of its 340,000 transformer units or to comply with the regulations, which it maintains would require the replacement of all of its transformer units.[7]

---

[5] Section 27 provides, in relevant part:
" ° ° ° In promulgating regulations under this Act, the Board shall take into account the existing physical conditions, the character of the area involved, including the character of surrounding land uses, zoning classifications, the nature of the existing air quality, or receiving body of water, as the case may be, and the technical feasibility and economic reasonableness of measuring or reducing the particular type of pollution."

In addition, section 25 requires these additional factors to be considered in the promulgation of noise regulations:
" ° ° ° the adverse ecological effects on and interference with the enjoyment of natural, scenic, wilderness or other outdoor recreational areas, parks, and forests occasioned by noise emissions from automotive, mechanical, and other sources ° ° °."

[6] The *Coal Operators* and *Shell Oil* cases previously discussed demonstrate that the Chamber and Edison are in error in their assertions that section 25 *requires* that regulations issued by the PCB be technically feasible and economically reasonable. It is clear that PCB need only take these factors into account. (37 Ill. App. 3d 264, 273-74.)

[7] Estimates of the compliance costs to Edison vary widely. Edison's estimate is that compliance with these regulations will cost $1.75 billion. The PCB estimates Edison's compliance costs at about $350 million.

■■■ The Illinois Supreme Court has stated very broadly that these regulations, based on the expertise of the task force of the Illinois Institute for Environmental Quality which initially developed them, the expertise of the members of the PCB and on the testimony of witnesses representing a broad variety of interests in 16 public hearings statewide, are not clearly arbitrary, capricious, or unreasonable. (*Illinois Coal Operators Association v. PCB*, at 310.) Further, the cases are clear that a rule-making body such as the PCB is exercising a quasi-legislative function, and that it has no burden to support its conclusions with a given quantum of evidence. (*Shell Oil Co. v. PCB*, at 272.) We have not been shown that either Rules 102 or 207 are, in any respect, clearly arbitrary, capricious, or unreasonable. We conclude, therefore, that the order of the Pollution Control Board adopting standards for the regulation of sound emissions from stationary noise sources shall be affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.