CITIZENS FOR A BETTER ENVIRONMENT *et al.*, Petitioners-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

First District (4th Division)   Nos. 86—3026, 86—3250 cons.

Opinion filed January 26, 1987.

JOHNSON, J., concurring in part and dissenting in part.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Nancy J. Rich and H. Alfred Ryan, Assistant Attorneys General, of Chicago, of counsel), for the People.

Business & Professional People for the Public Interest, of Chicago (Howard A. Learner, John R. Hammell, and Robert L. Jones, Jr., of counsel), for appellant Citizens for a Better Environment.

Lee Cunningham, Kathleen Crowley, and Lorilyn Chamberlin, all of Chicago, for appellee Illinois Pollution Control Board.

Rooks, Pitts & Poust, of Chicago (James T. Harrington, Richard M. Kuntz, and Katherine D. Hodge, of counsel), for appellee Illinois Environmental Regulatory Group.

Collins & Flynn, of Springfield (Neil F. Flynn, of counsel), for appellee J. Theodore Meyer.

JUSTICE JIGANTI delivered the opinion of the court:

The petitioners-appellants, Citizens for a Better Environment (CBE) and the People of the State of Illinois, challenge the propriety of the use by the Illinois Pollution Control Board (Board) of the emergency rulemaking procedures under the Illinois Administrative Procedure Act (IAPA) (Ill. Rev. Stat. 1985, ch. 127, par. 1005.02).

Preliminarily, the relationship between the Environmental Protection Agency (Agency) and the Board should be noted. The Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 et seq.) directs the Agency to administer the provisions of the Act and provides the Agency with some specific regulatory powers. Generally, however, the rulemaking authority rests with the Board. The Agency has the authority to appear before the Board in any hearing under the Act and to make recommendations to the Board for the adoption of regulations. (Ill. Rev. Stat. 1985, ch. 111½, pars. 1004(f), (i).) In the instant case, the positions of the Agency and Board with regard to section 39(h) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(h)) and the emergency rules for the implementation of that section are antagonistic.

Generally, administrative rulemaking is conducted according to the notice-and-comment procedures set forth in section 5.01 of the IAPA (Ill. Rev. Stat. 1985, ch. 127, par. 1005.01). Section 5.02, however, provides for emergency rulemaking and states that "[w]here any agency finds that an emergency exists which requires adoption of a rule upon fewer days than is required by Section 5.01, and states in writing its reasons for that finding, the agency may adopt an emergency rule without prior notice or hearing, upon filing a notice of emergency rule making with the Secretary of State." This section defines emergency as "the existence of any situation which any agency finds reasonably constitutes a threat to the public interest, safety or welfare." (Ill. Rev. Stat. 1985, ch. 127, par. 1005.02.) Similar authority to adopt emergency rules according to the standards set forth in section 5.02 is granted to the Board under section 27(c) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1027(c)).

On October 23, 1986, the Board, pursuant to section 5.02, adopted emergency rules which were to guide the implementation of section 39(h) of the Act. Section 39(h) was enacted by the Illinois General Assembly in order to prohibit the deposit of hazardous waste streams in a permitted hazardous waste site unless the waste generators and site

owners and operators obtain specific authorization from the Agency. Although this section was enacted in 1981, it was not to become effective until January 1, 1987. Implementation action as to this section began in February of 1986 when the Board opened a docket to conduct inquiry hearings regarding the implementation of section 39(h) and to solicit regulatory proposals. No proposals, however, were filed.

In June of 1986, both the Agency and Board took action regarding section 39(h). The agency issued a set of implementation guidelines detailing the manner in which the Agency would apply section 39(h) to a hazardous waste generator's request for authorization. The Board convened and issued a proposed rule to govern the implementation of section 39(h). Four days of hearings were held on the Board's proposed rule at which the CBE, the Agency, and various industrial trade associations presented testimony and conducted cross-examination.

Following those hearings, the Board requested the parties to file written comments on the legal authorization of the Board to issue an emergency rule. The CBE responded with a legal memorandum which argued that under the circumstances present, the Board lacked statutory authority to issue an emergency rule and that several provisions of the Board's proposal were not in keeping with section 39(h).

On October 2, 1986, the Board convened and issued an order proposing an emergency rule with regard to the implementation of section 39(h). On October 3, 1986, the CBE moved Board member, J. Theodore Meyer, to recuse himself from deliberations as to the Board's proposed rule on the grounds that Meyer had exhibited an unalterably closed mind on certain pertinent issues regarding section 39(h). Meyer declined to recuse himself. Further details concerning the motion for recusal will be provided in connection with the discussion of that issue. On October 6, 1986, the Board voted to vacate the order of October 2, 1986. However, three days later the Board reconsidered and issued a proposed emergency rule which established an 11-day period for the filing of public comment prior to final adoption. The Board's order adopting the emergency rule and declining to disqualify Meyer was issued on October 23, 1986. It is from this order that the CBE and the People appeal raising the issues of whether the Board lacked authority to adopt an emergency rule under section 5.02 of the IAPA; whether Board member Meyer should have been disqualified; and whether the Board properly interpreted section 39(h) when it adopted the emergency rules.

■■ The CBE and the People first contend that the Board lacked authority to adopt the October 23, 1986, emergency rule because

there was no emergency, as defined by section 5.02 of the IAPA, to justify bypassing the general notice-and-comment rulemaking procedures. We recognize that the existence of an emergency is primarily a matter of agency discretion, yet courts are not conclusively bound by an agency's determination that an emergency exists. *Senn Park Nursing Center v. Miller* (1983), 118 Ill. App. 3d 733, 744, 455 N.E.2d 162 (citing *Schenley Affiliated Brands Corp. v. Kirby* (1971), 21 Cal. App. 3d 177, 194-95, 98 Cal. Rptr. 609, 623, and *Poschman v. Dumke* (1973), 31 Cal. App. 3d 932, 941, 107 Cal. Rptr. 596, 602), *aff'd* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029.

In this case several reasons were propounded by the Board in support of its position that emergency rulemaking under section 5.02 was proper.[1] First, the Board argues that the emergency rules will clarify the generally worded provisions of section 39(h), especially regarding the scope of that section and the extent of the Agency's discretion as to issuing waste stream authorizations. This clarification, the Board points out, will reduce the uncertainty within the regulated community. Moreover, clarifying section 39(h), the Board contends, will reduce the number of appeals to the Board from an Agency determination with respect to the waste stream authorizations and reduce the need for judicial interpretation of section 39(h). Additionally, the Board argues that the adoption of the emergency rules would ease the transition period when final rules are adopted. Finally, the Board notes that an argument can be made that section 39(h) is not self-executing and thus will not become effective without these emergency rules.

As stated above, an "emergency" is present, which would justify the employment of the emergency rulemaking procedures under section 5.02, when there *exists* a situation which reasonably constitutes a *threat* to the public interest, safety, or welfare. Stated differently, the need to adopt emergency rules in order to alleviate an administrative need, which, by itself, does not threaten the public interest, safety, or welfare, does not constitute an "emergency." Notwithstanding that the reasons given by the Board to justify the invocation of emergency rulemaking would indeed ease in the implementation of section 39(h), no facts have been presented to show that without these emergency rules the public would be confronted with a threatening situation.

Specifically, the Board contends that section 39(h) needs clarifica-

---

[1]These reasons are set forth in the Board's proposed emergency rule of October 9, 1986, which was incorporated by reference into the order of October 23, 1986.

tion so as to reduce uncertainty within the industry and within the Agency and Board. Be that as it may, the Board has not shown that any ambiguity in section 39(h) amounts to a threat to the public. Nor does the Board's argument as to potential appeals to the Board and courts reflect the existence of a threat to the public. Certainly any appeals process requires the expending of public funds which in turn impacts on the public, but this, however, still does not threaten the safety or welfare of the public. Further, we do not believe that easing the transition period before final rules are adopted satisfies the requirements of section 5.02, as helpfulness in administering regulatory statutes is not the standard contemplated by that section. As for the argument that section 39(h) will not become effective without these rules, we note that the Board has not supported this conclusory statement with any facts nor has the Board shown that a delayed effective date of section 39(h) would threaten the public interest, safety, or welfare.

■■ ■ We also note that the Board was cognizant that the administrative problem it is now confronted with could have been prevented. As the Board stated, in order to avoid the implementation problems it now faces, rules should have been adopted at least a year ago. This situation is closely analogous to the case of *Senn Park Nursing Center v. Miller* (1983), 118 Ill. App. 3d 733, 455 N.E.2d 162, *aff'd* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029. Here, as in *Senn Park*, we have an administrative problem that was self-created and an attempt to remedy the situation was made at the eleventh hour. In this case section 39(h) was enacted in 1981 and was to become effective almost six years later on January 1, 1987. Nevertheless, work on implementation rules as to section 39(h) did not actually begin until June of 1986 and rules were not issued until October of 1986. We do not hold that in all instances of delay the emergency rulemaking powers of section 5.02 cannot be utilized. Rather, only when delay has resulted in a situation that threatens the public interest, safety, or welfare is the use of section 5.02 proper. Consequently, because the facts in this case do not reveal the existence of an emergency, the rules adopted by the Board on October 23, 1986, are invalid.

■■ The second issue raised on appeal is whether Board member Meyer should have recused himself or been disqualified from participating in the deliberations regarding the emergency rule of October 23, 1986. The CBE argues that Meyer's statements on the record in this cause and his prior position as a State legislator who led opposition to the Senate bill which established section 39(h) demonstrate that he had an unalterably closed mind as to its interpretation and ap-

plication.

The record indicates that at the time section 39(h) was enacted, Meyer was a member of the Illinois House of Representatives and served as chairman of the Committee on Energy and Environment. As such, he was a key participant in the legislative process which resulted in the enactment of section 39(h).

As previously noted, the Board on June 11, 1986, issued a proposed rule to govern the implementation of section 39(h). Hearings on the proposed rule were held on August 3, 1986, and again on September 3-5, 1986, at which the plaintiffs, the Agency, and various industrial trade associations participated. Following these hearings, the Board invited all interested parties to file written comments regarding its legal authority to issue an emergency rule with respect to the matter.

On October 2, 1986, after the hearings had been closed and the deadline for written comments had passed, the Board convened a meeting to vote upon the adoption of a proposed emergency rule. In expressing his opinion as to the legislative intent behind section 39(h), Meyer made several references to the transcripts of the floor debates in the House of Representatives, in which he was an active participant. At one point, he described himself as the "living legislative intent" and quoted a portion of the transcript in which he stated that the Senate bill which established section 39(h) was "a bad bill" and should have been defeated. After discussing the matter at length, the Board decided to make certain changes in the proposed rule and to issue a draft for further comments by interested parties. Meyer stated that he would support issuance of the proposed rule, but that "all the comments in the world aren't going to change what I'm firmly convinced was the legislative intent *** given my participation in the bill."

The next day, the CBE filed a motion requesting that Meyer recuse himself from further participation in the proceedings on the grounds that his statements at the October 2, 1986, meeting exhibited an "unalterably closed mind" on pertinent issues regarding the implementation of section 39(h). Meyer refused to do so and the CBE subsequently filed a motion asking the Board to disqualify him. On October 23, 1986, a four-member majority of the Board, which included the vote of Meyer, adopted an emergency rule and rejected the CBE's motion for disqualification of Meyer.

In addressing this issue we note that it is presumed that an administrative official is objective and "capable of judging a particular controversy fairly on the basis of its own circumstances." (*United*

*States v. Morgan* (1941), 313 U.S. 409, 421, 85 L. Ed. 2d 1429, 1435, 61 S. Ct. 999, 1004.) The mere fact that the official has taken a public position or expressed strong views on the issues involved does not serve to overcome that presumption. (*Hortonville Joint School District No. 1. v. Hortonville Education Association* (1976), 426 U.S. 482, 49 L. Ed. 1, 96 S. Ct. 2308.) Nor is it sufficient to show that the official's alleged predisposition resulted from his participation in earlier proceedings on the matter in dispute. (*Federal Trade Com. v. Cement Institute* (1948), 333 U.S. 683, 92 L. Ed. 1010, 68 S. Ct. 793.) "To disqualify administrators because of opinions they expressed or developed in earlier proceedings would mean that 'experience acquired from their work *** would be a handicap instead of an advantage.' " (*United Steelworkers of America v. Marshall* (D.C. Cir. 1980), 647 F.2d 1189, 1209, *cert. denied sub nom. Lead Industries Association v. Donovan* (1981), 453 U.S. 913, 69 L. Ed. 2d 997, 101 S. Ct. 3148.) Rather, the presumption of administrative regularity will be overcome only where it is shown by clear and convincing evidence that the official has an unalterably closed mind in matters critical to the disposition of the proceeding. *Association of National Advertisers, Inc. v. Federal Trade Com.* (D.C. Cir. 1979), 627 F.2d 1151, 1170.

■ The record in the case at bar shows that on October 2, 1986, the Board called a meeting to vote upon the adoption of an emergency rule governing the implementation of section 39(h). During the course of this meeting, disagreement arose as to the proper interpretation of certain words and phrases contained in section 39(h). In expressing his views on the legislative intent behind that particular piece of legislation, Meyer quoted heavily from the transcripts of the House floor debates in which he participated extensively in his former role as a State legislator. Because of his experience in that regard, Meyer's interpretation of the legislative intent was valuable and entitled to considerable weight by the Board in making its determination. (*M.I.G. Investments, Inc. v. EPA* (1986), 151 Ill. App. 3d 488.) The fact that, as a legislator, Meyer held particular views in connection with the interpretation of section 39(h) does not mean that he was bound to them and unable to change his mind upon consideration of the points raised in the instant rulemaking proceeding. It is important to note in this regard that the statements which the plaintiffs rely upon in arguing that Meyer had an unalterably closed mind were made after the public hearings had been closed and after he had reviewed the transcripts of the House floor debates with the other Board members. Despite this fact, the CBE asks us to construe

Meyer's remarks retroactively and conclude that he entered the rule-making proceedings with a closed mind. We do not believe this is the type of clear and convincing evidence which is necessary to overcome a presumption that Meyer could discharge his duties in an objective and unbiased manner. For this reason, we do not believe that Meyer acted improperly in refusing to recuse himself from the proceedings which resulted in the adoption of the emergency rule.

In light of our decision that the Board's order adopting the emergency rule must be vacated, there is no need for the court to address the question of whether the Board properly interpreted section 39(h) in adopting the emergency rules.

In conformity with the relief requested by the CBE and the People, the order of October 23, 1986, adopting the emergency rules must be vacated for the reasons stated above.

Order vacated.

McMORROW, P.J., concurs.

JUSTICE JOHNSON, concurring in part and dissenting in part:

I respectfully dissent from that part of the majority opinion declaring invalid the October 23, 1986, emergency rule of the Pollution Control Board (Board). I agree with the majority, however, that Board member J. Theodore Meyer did not act improperly in refusing to recuse himself from the proceedings that resulted in the adoption of the emergency rule.

I believe that the Board's adoption of the emergency rule was a valid exercise of its rulemaking powers. Section 39(h) of the Environmental Protection Act authorized the Board to promulgate regulations implementing the statute. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(h).) The Board determined that an emergency existed pursuant to section 5.02 of the Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1005.02) and, accordingly, bypassed the general rulemaking procedures requiring notice and comment.

Administrative action taken under statutory authority will not be set aside unless it has been clearly arbitrary, unreasonable, or capricious. (*Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310, 319 N.E.2d 782, 785.) Courts adopted this high standard of review because administrative agencies are inherently more qualified to decide technical problems and the mechanics of dealing with those problems. We should hesitate to find a regulation unreasonable because we lack the expertise that administrative

agencies possess. (*Shell Oil Co. v. Pollution Control Board* (1976), 37 Ill. App. 3d 264, 271, 346 N.E.2d 212, 218.) Further, the burden of establishing the invalidity of agency regulations is on the petitioner. *Illinois State Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954, 960, 364 N.E.2d 631, 635.

Applying these principles to the instant case, I conclude that the CBE failed to establish that the October 23, 1986, emergency rule was arbitrary, unreasonable, or capricious. Although courts are not conclusively bound by an agency's determination that an emergency exists (*Senn Park Nursing Center v. Miller* (1983), 118 Ill. App. 3d 733, 744, 455 N.E.2d 162, 170, *aff'd* (1984), 104 Ill. 2d 169, 470 N.E.2d 1029), I believe that the Board was in a better position than this court to make the determination. We should not be quick, therefore, to dismiss these regulations as based on mere speculation. I would affirm the Board's October 23, 1986, emergency rule as a valid exercise of its rulemaking powers.