A. R. F. LANDFILL, INC., Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Second District No. 2—87—1225

Opinion filed August 26, 1988.

Bradley R. O'Brien, of Gardner, Carton & Douglas, of Chicago (Richard J. Kissel, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, Matthew J. Dunn, Joseph M. Claps, and Michelle D. Jordan, Assistant Attorneys General, and Dorothy M. Gunn, of Pollution Control Board, of Chicago, of counsel), for respondent Pollution Control Board.

Fred L. Foreman, State's Attorney, of Waukegan (Michael J. Phillips, Assistant State's Attorney, of Freeport, and Mitchell L. Hoffman, Assistant State's Attorney, of Waukegan, of counsel), for respondent County of Lake.

JUSTICE REINHARD delivered the opinion of the court:

Petitioner, A. R. F. Landfill, Inc. (ARF), sought siting approval from the Lake County Board (county board) for expansion of its present waste management facility. Following an evidentiary hearing, conducted pursuant to sections 39.2(d) and (e) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, pars. 1039.2(d), (e)), the county board denied ARF's request for siting approval. ARF

appealed the county board's decision to the Illinois Pollution Control Board (PCB), which, after a hearing on ARF's appeal pursuant to section 40.1 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1), affirmed the decision of the county board.

The issues raised on appeal are whether the county board was biased and prejudiced, thereby conducting a fundamentally unfair local siting hearing, and whether the PCB's decision that ARF failed to satisfy criteria (i), (ii), and (vi) of section 39.2(a) of the Act is against the manifest weight of the evidence.

On October 3, 1986, ARF filed its local siting request with Lake County seeking approval for expansion of its present waste management site. A local siting hearing commenced on January 19, 1987. The hearing was conducted by seven members of the county board and a hearing officer. Also present, in addition to various attorneys and witnesses, were John David Koenen, a Lake County assistant State's Attorney representing Lake County, and Larry M. Clark, a Lake County assistant State's Attorney representing the Lake County Joint Action Solid Waste Planning Agency. Both ARF and objectors to ARF's application presented numerous witnesses who provided extensive testimony on the various statutory criteria under section 39.2(a). The hearing committee subsequently voted to deny ARF's petition because it failed to meet any of the six applicable criteria set forth in section 39.2(a) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)). On March 24, 1987, the county board planning and zoning committee presented the hearing committee's findings and a resolution denying ARF's petition to the county board. The county board denied ARF's petition by a 22 to 1 vote, with one abstention, based on ARF's failure to satisfy any of the statutory criteria in section 39.2(a).

On April 27, 1987, ARF filed a "siting application appeal" with the PCB. In its appeal, ARF claimed that the decision of the county board was against the manifest weight of the evidence, that the county board was biased and prejudiced, and that the hearing was fundamentally unfair. Additionally, ARF filed interrogatories with the PCB as well as mailed copies of those interrogatories to each member of the county board and to the counsel of record. Pursuant to ARF's motion to compel response to discovery, the PCB hearing officer issued an order compelling the county board members to answer the interrogatories by June 12, 1987, or justify their failure to respond by that date.

On June 15, 1987, ARF filed an emergency motion for sanctions against the county board for its failure to respond to the interrogatories and discovery request. Beginning on June 16, 1987, and continu-

ing to August 11, 1987, the various county board members filed their responses to the interrogatories. The PCB's October 1, 1987, order reflects that it considered the answers to interrogatories filed by the county board members.

On June 24, 1987, the PCB conducted its public hearing. ARF did not present any witnesses in support of its claim of bias and prejudice, but did offer several newspaper articles which it claimed demonstrated the bias and prejudice of certain county board members. Specifically, ARF refers to the following quotations contained in various newspaper articles, published prior to the initial siting hearing, as evidence of county board member bias and prejudice:

County Board Member Bruce Hansen:

"We need to start speaking out. We need to stand up and say, if eight saints stand on their heads, I still won't vote for a landfill."

County Board Member John Reindl:

"The density of Heartland won't be a problem, never fear, because no one will want to live near a garbage dump."

County Board Member Bruce Hansen:

"I am deeply saddened that I even have to be here tonight *** to fight off a landfill in our own backyard."

County Board Member Gerald Beyer:

"Residents in the area of the ARF Landfill 'have had enough of landfills.' "

ARF also refers to two additional newspaper articles containing statements made by county board members; however, the record indicates that one is not an accurate quotation, and the other is not contained in the record. Additionally, ARF refers to several newspaper articles which do not contain any specific statements of any board members, but rather, are merely news reports.

On October 1, 1987, the PCB issued its opinion and order. The opinion and order, which included one concurring opinion, one concurring statement, and one dissenting opinion, affirmed the county board's denial of ARF's local siting petition. In its order, the PCB found the following: that the county board conducted a fundamentally fair hearing; that the allegations of bias and prejudice were unsubstantiated; that the motion for discovery sanctions should be denied because of the improper questions contained in ARF's interrogatories; and that the county board's findings as to section 39.2(a) criteria (i), (ii), and (vi) were not against the manifest weight of the evidence but that criteria (iii), (iv), and (v) were. It, therefore, reversed the decision of the county board as to criteria (iii), (iv), and (v).

ARF contends on appeal that the county board was biased and prejudiced and conducted a fundamentally unfair local hearing. Specifically, it argues first that certain board members were biased and prejudiced because they admitted in public statements prior to the hearing that they were opposed to ARF's local siting petition regardless of its merits. Second, it maintains that because two Lake County assistant State's Attorneys participated in the hearing, the county board failed to act as an impartial judge, resulting in a fundamentally unfair hearing. Third, it contends that certain board members were biased and prejudiced because of their responses to interrogatories submitted by ARF. Finally, it posits that the county board members were biased and prejudiced because of their failure to timely comply with the hearing officer's order in the PCB proceedings directing them to respond to the discovery request or provide justification for failing to do so.

Lake County and the PCB make several responses to these arguments. However, we need only consider their contention that by failing to move for disqualification of the allegedly biased and prejudiced board members or filing a motion to reconsider alleging bias and prejudice during all the proceedings before the county board, ARF waived the bias and prejudice issue.

The question of the possible bias and prejudice of members of the county board first arose when the attorney for ARF wrote a letter on January 7, 1987, to the hearing officer conducting the initial siting hearing for the county board. The letter stated that county board members "may have" expressed opinions concerning their position on ARF's petition, as indicated in various newspaper articles, and requested that, in order to "clear the air" on this question, the hearing officer require each county board member, prior to the county board hearing, to answer the following questions:

"Have you expressed any opinion to any persons as to whether the application filed by A.R.F. Corporation on October 3, 1986 should be granted or denied? If so, please answer the following:

1) To whom was the statement made?
2) When was the statement made?
3) Where was the statement made?
4) To the best extent you can, state the exact statements which you made concerning the A.R.F. application.
5) Do you claim that any of the statements made were privileged for any reason? If so, please give those reasons."

The hearing officer granted the request, and all county board members of the hearing committee answered the questions in the neg-

ative prior to the hearing before that committee. Prior to the vote on the petition before the full county board, all county board members answered the questions in the negative, except one member, who replied, however, that he would be able to judge ARF's petition fairly and impartially on the evidence presented at the hearing. At no time during any of the hearings before the hearing committee and the full county board, or thereafter before those bodies, did ARF raise any issue of prejudice and bias and move to disqualify any county board member. The issue was not actually raised until ARF's appeal to the PCB. Moreover, no issue was ever raised in the local hearings that, because two assistant State's Attorneys participated in the hearing, the county board failed to act as an impartial judge in the proceeding which demonstrated the county board's bias and prejudice resulting in a fundamentally unfair hearing.

■ ■ Generally, a failure to object at the original proceeding constitutes a waiver of the right to raise an issue on appeal. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 38, 481 N.E.2d 644.) Moreover, a claim of bias or prejudice on the part of a member of an administrative agency or the judiciary must be asserted promptly after knowledge of the alleged disqualification. (107 Ill. 2d at 38, 481 N.E.2d at 666.) This is so because it would be improper to allow a party to withhold a claim of bias until it obtained an unfavorable ruling. (107 Ill. 2d at 38-39, 481 N.E.2d at 666.) A reviewing court may consider questions of law not decided by an administrative agency, however, where injustice might otherwise result (*Wadlington v. Mindes* (1970), 45 Ill. 2d 447, 453, 259 N.E.2d 257) or where the issue is one of great public importance. *Doran v. Cullerton* (1972), 51 Ill. 2d 553, 558-59, 283 N.E.2d 865.

■ We conclude that ARF waived its right to object to any claim of bias or prejudice of the county board members by failing to object on that basis in any of the proceedings prior to or during the local hearings. It would appear that ARF chose not to follow through on its mere statement in the letter to the hearing officer that county board members "may have" expressed prior opinions on ARF's petition, and withheld any actual claim of bias until its appeal to the PCB after unfavorable decisions on the merits of its petition in the local hearings. The newspaper articles of statements of some county board members, later presented to the PCB, were published prior to the local hearings and were available for ARF to pursue any claim of bias at the local hearings. Any alleged statements of the county board members at the time of voting which might indicate bias could have been raised in a post-hearing motion before the board. Under these circumstances, we

find a waiver of the right to raise the bias and prejudice issue on appeal, and, from our review of the record, no injustice results from application of the waiver doctrine.

 Even were we to consider ARF's allegations of bias of the county board members made before the PCB in its application to appeal, from our review of the allegations, the newspaper articles cited, the responses of the board members to interrogatories in the PCB proceedings and the transcript of the county board members voting at the local hearing, we would find that ARF has not overcome the presumption that administrative officials are objective and capable of fairly judging a particular controversy. (See *Citizens for a Better Environment v. Pollution Control Board* (1987), 152 Ill. App. 3d 105, 111-12, 504 N.E.2d 166.) Moreover, the fact that an administrative official has taken a public position or expressed strong views on an issue before the administrative agency does not overcome the presumption. (*Citizens for a Better Environment*, 152 Ill. App. 3d at 112, 504 N.E.2d at 171.) Where, as here, the administrative agency is engaged in an adjudicatory capacity, bias or prejudice may be shown if a disinterested observer might conclude that the administrative body, or its members, had in some measure adjudged the facts as well as the law of the case in advance of hearing it. (*E & E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 598, 451 N.E.2d 555, aff'd (1985), 107 Ill. 2d 33, 481 N.E.2d 664.) Such has not been shown except for the one board member who the PCB found was biased.

The newspaper articles containing quotations of certain county board members were not supported by any other evidence to verify the alleged statements. There was neither a written nor an oral statement by any person in conformance with the statutory rules on submission of evidence to the PCB. (See Ill. Rev. Stat. 1985, ch. 111½, pars. 1032, 1040.1(a).) Nor do we view certain county board members' statements at the time their votes were recorded as showing a preadjudication bias. Considering these and the other claims of bias made by ARF, we find bias and prejudice has not been shown. Any bias on the part of the one county board member, as found by the PCB, was not shown on this record to have affected the deliberations of the other county board members.

We next address the issue of whether the PCB's determination that ARF failed to satisfy criteria (i), (ii), and (vi) of section 39.2(a) of the Act is against the manifest weight of the evidence. Section 39.2(a) of the Act sets forth the criteria which much be met for approval of a local siting application. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a).)

Section 39.2(a) states, in pertinent part:

"(a) The county board of the county or the governing body of the municipality *** shall approve the site location suitability for such new regional pollution control facility only in accordance with the following criteria:

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain as determined by the Illinois Department of Transportation, or the site is flood-proofed to meet the standards and requirements of the Illinois Department of Transportation and is approved by that Department;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows; and

(vii) if the facility will be treating, storing or disposing of hazardous waste, an emergency response plan exists for the facility which includes notification, containment and evacuation procedures to be used in case of an accidental release." Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a).

■ All of the statutory criteria must be satisfied before a local board may approve a local siting application. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1987), 160 Ill. App. 3d 434, 442-43, 513 N.E.2d 592.) In this case, ARF applied for a nonhazardous site location; therefore, criterion (vii) is not applicable. Additionally, the PCB found the county board's decision as to criteria (iii), (iv), and (v) to be against the manifest weight of the evidence, a determination which is not challenged in this appeal. Accordingly, we need only address the PCB decision as to criteria (i), (ii), and (vi). In doing so, we must apply the manifest weight of the evidence standard to each criterion separately. (*Waste Management*, 160 Ill. App. 3d at 441-42, 513 N.E.2d at 597.) The role of a reviewing court on administrative review is limited to a determination of whether the administrative agency's decision was contrary to the manifest weight of the evidence (*McHenry County Landfill, Inc. v. Environmental Protec-*

*tion Agency* (1987), 154 Ill. App. 3d 89, 100, 506 N.E.2d 372; *Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 666, 497 N.E.2d 152), and as such a reviewing court should not reweigh conflicting testimony. *McHenry County Landfill,* 154 Ill. App. 3d at 100, 506 N.E.2d at 379; *Fixmer,* 146 Ill. App. 3d at 666, 497 N.E.2d at 156-57.

■ Section 39.2(a)(i) requires that the petitioner establish that the site location is necessary for the area to be served. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039.2(a)(i); *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 1083-84, 463 N.E.2d 969.) Although a petitioner need not show absolute necessity, it must demonstrate an urgent need for the new facility as well as the reasonable convenience of establishing a new or expanding an existing landfill. (*Waste Management,* 123 Ill. App. 3d at 1084, 463 N.E.2d at 976.) The petition must show that the landfill is reasonably required by the waste needs of the area, including consideration of its waste production and disposal capabilities. *Waste Management,* 123 Ill. App. 3d at 1084, 463 N.E.2d at 976.

■ The evidence offered by ARF in support of criterion (i) was comprised of the testimony of its consulting expert, John Thorsen, the Lake County Soil Waste Management Plan Feasibility Study (SWAC Study), and the Northeastern Illinois Planning Commission Solid Waste Management Plan (NIPC Plan). Thorsen essentially testified that Lake County would need additional landfill facilities at its current rate of use by 1993 or 1994. This testimony was based on the SWAC and NIPC plans. The SWAC plan, however, was limited to refuse disposal capacity in Lake County only and the NIPC plan was over two years old. He also testified to recent rates of disposal at the present ARF facility. Additionally, he stated that ARF currently manages 20% to 30% of the solid waste in Lake County. According to Thorsen, there are only two other landfills serving Lake County, only one of which accepts nonhazardous waste similar to ARF.

On cross-examination Thorsen admitted there are other facilities in Lake County that currently accept solid waste. Additionally, he stated that there are 26 other solid waste facilities in the counties immediately surrounding Lake County. He further admitted that he did not consider landfill facilities in Wisconsin which are otherwise in the normal range of refuse transportation. More importantly, he stated that he did not conduct an independent evaluation of need in Lake County.

Based on this evidence, the PCB concluded that the county board's determination that ARF failed to meet criterion (i) was not

against the manifest weight of the evidence. Thorsen did not establish a current need for additional landfill space in Lake County. According to him, additional space would not be needed until 1993. Moreover, of the two plans relied on by Thorsen, the SWAC plan failed to consider refuse disposal capacity in surrounding areas outside of Lake County and the NIPC plan was not current. Additionally, this estimate of disposal capacity was contradicted by M. Robert Luedtke, president of the Lake County Joint Action Solid Waste Agency, who testified that depending on compaction rates the capacity would last until 1994 to 1997. Furthermore, Thorsen did not consider the current disposal capacity of other landfills operating within the surrounding area. In light of the evidence presented on this criterion, it cannot be said that the county board's decision as to criterion (i) was against the manifest weight of the evidence.

■ Criterion (ii) is concerned with whether the proposed facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected. At the hearing before the county board, both sides introduced substantial evidence on this point. The evidence may be summarized as follows. ARF''s expert, Edward Need, a hydrogeologist, testified to the water and soil conditions below and surrounding the proposed site. According to Need, the existing clay soils could be reworked to provide a clay liner that would inhibit the leaking of contaminated water (leachate) into the surrounding groundwater. He further testified that due to possible vertical seams of sand in the clay subsoil, the lateral movement of leachate could be as much as 32 feet per 100 years. Nevertheless, he opined that there is virtually no hazard to the public health, safety or welfare from leachate migration.

John Thorsen also testified on this point on behalf of ARF. According to him, a leachate collection system would be installed thereby minimizing the possibility of leachate migration into surrounding groundwater. Additionally, he testified that a gas venting system would be utilized to eliminate noxious odors. Finally, he stated that once the leachate collection system is closed it will take between 20 and 100 years for leachate to reach surrounding groundwater.

The last witness for ARF was Dr. Robert Schoenberger, a solid and hazardous waste consultant. Dr. Schoenberger testified that the proposed site characteristics, design and operation meets currently accepted standards and will protect the public health, safety and welfare.

Objectors to ARF''s petition offered Brandon Koltz, an environmental engineer, who testified that two private wells are located

within 400 feet of the proposed site and that certain proposed monitoring wells cannot detect groundwater levels located just below the landfill. Further, he stated that there are no proposed monitoring wells which would act as an "early warning system" for those persons with wells located near the site. More importantly, Koltz also criticized the leachate collection system as being inadequate, that there was no proposal for a specific depth and width of the clay liner, that there was no provision for inspection of the system, and that there were no provisions for gas monitoring.

Dr. James Tracy, a civil and geologic engineer, also testified for the objectors. Dr. Tracy's testimony was based on his review of ARF's application and the testimony of its experts. Although Dr. Tracy found the proposal to be generally adequate, he specifically criticized certain data used, concluded monitoring wells were inadequate, and found that certain necessary tests and boring samples were not conducted. Finally, he concluded that ARF's calculations as to groundwater depth and water migration rates were inaccurate.

Objectors offered additional expert witnesses, who need not be specifically identified here, who testified that the leachate collection system is inadequate, the proposal for a liner is lacking specificity, and the number of well borings is inadequate. Based upon the extensive evidence presented to the county board, the body in the best position to judge the credibility of the witnesses and weigh the testimony, the decision of the county board as to criterion (ii) is not against the manifest weight of the evidence.

▆▆ The last criterion we must consider is whether the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows. ARF contends that it established, through its own traffic study and the testimony of a traffic engineer, that the new facility would have a minimum impact on the existing traffic flow. Lake County responds that its own expert contradicted the testimony presented by ARF and that such conflicting testimony was a matter to be weighed by the county board and should not be reweighed by this court.

Paul C. Box, a traffic engineering consultant, appeared on behalf of the objectors. According to Box, the increased volume of trucks entering and leaving the facility would create additional traffic problems in the roads surrounding the landfill. Additionally, he testified that one of the access roads (Harris Road) is currently too narrow to safely accommodate two garbage trucks passing each other from opposite directions, and that in his opinion the proposed expansion would have an adverse effect on traffic conditions in the area. More-

over, he opined that the proposed traffic patterns for the landfill facility would not minimize the impact on existing traffic flows.

ARF offered Gerald Salzman, a traffic engineering consultant who testified to the impact that the proposed landfill expansion would have on the existing traffic flow. After testifying to a traffic flow study of the area, he opined that the proposed expansion would not have an adverse effect on traffic conditions in the area. On cross-examination, Salzman stated that Harris Road would not currently support the average weight of a garbage truck and would have to be upgraded. Additionally, he testified that he relied on ARF's analysis of increased traffic flows in arriving at his opinions on impact on existing traffic flows. Based on the evidence presented, the county board found that ARF failed to meet criterion (vi). The PCB found this determination to not be against the manifest weight of the evidence. Because there was conflicting testimony on criterion (vi), and because the county board was in the best position to weigh the testimony, we affirm the decision of the PCB.

For the foregoing reasons, we affirm the decision of the Illinois Pollution Control Board.

Affirmed.

UNVERZAGT and DUNN, JJ., concur.