McHENRY COUNTY LANDFILL, INC., Plaintiff-Appellant, v. THE EN-VIRONMENTAL PROTECTION AGENCY *et al.*, Defendants-Appellees (The Village of Huntley *et al.*, Intervenors-Appellees).—McHENRY COUNTY LANDFILL, INC., Appellants, v. THE ILLINOIS POLLUTION CONTROL BOARD *et al.*, Appellees.

Second District   Nos. 2—86—0265, 2—86—0369 cons.

Opinion filed March 30, 1987.

James G. Militello and James L. Wright, both of Militello, Zanck & Coen, of Crystal Lake, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Matthew J. Dunn, Roma Jones Stewart, and H. Alfred Ryan, Assistant Attorneys General, of Chicago, of counsel), for appellees Illinois Environmental Protection Agency and Pollution Control Board.

Theodore J. Floro, State's Attorney, of Woodstock (Paul R. Ryske, Assistant State's Attorney, and David R. Akemann and William F. Barrett, Special Assistant State's Attorneys, of counsel), for appellee County of McHenry.

Michael F. Kukla, of Cowlin, Ungvarksy, Kukla & Curran, of Crystal Lake, for appellees Village of Huntley, Arthur T. McIntosh & Company, Village of Lakewood, Landfill Emergency Action Committee, McHenry County Defenders, and Huntley Fire Protection District.

JUSTICE UNVERZAGT delivered the opinion of the court:
These two appeals, consolidated for opinion, involve plaintiff's at-

tempts to gain site location approval for a new sanitary landfill in McHenry County pursuant to the provisions of the Environmental Protection Act (hereinafter designated the Act) (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2). We begin by reviewing the somewhat complicated case history.

Plaintiff, McHenry County Landfill, Inc. (hereinafter designated Landfill), filed its initial request for site approval with McHenry County on November 27, 1984. In January and February 1985, the McHenry County board held hearings to determine the suitability of the site under the six criteria set out in the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2). The board denied the request, finding that plaintiff had established only three of the six criteria. Landfill then petitioned the Pollution Control Board (hereinafter designated the PCB) to review that decision as provided by section 40.1 of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1040.1). Cross-appeals were filed by Arthur T. McIntosh & Company, the Landfill Emergency Action Committee, the villages of Lakewood and Huntley and several others who participated in the county hearing (hereinafter referred to as the objectors) to challenge the board's conclusion that three of the criteria had been met. The PCB determined that the county board improperly required Landfill to establish by the manifest weight of the evidence that its site met the statutory criteria, rather than using the appropriate preponderance of the evidence standard. The PCB concluded that, because the decision was not rendered under the correct standard, it had "no proper subject for review before it." It remanded to the county board, directing that it apply the correct standard but noting that it need not hold a new hearing. On October 15, 1985, the county board took a new vote and reaffirmed its first order, concluding that it had in fact applied the preponderance of the evidence standard in reaching that original decision.

Following the county board's second decision, Landfill submitted a statement to the Environmental Protection Agency (hereinafter the EPA) requesting that it issue Landfill a permit to develop the site, claiming that it had been approved by operation of law because the PCB had not followed the mandatory procedures set out in the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1) and because the county board had not taken "final action" within 120 days of the initial filing (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2). However, Landfill also appealed the county board's second decision to the PCB. The EPA informed Landfill that it would not issue a permit absent an order from the PCB or a court of law.

On January 13, 1986, Landfill filed a declaratory action in the cir-

cuit court of McHenry County requesting that it stay the PCB proceedings and issue a declaratory judgment finding site approval by operation of law. The suit named the EPA, the PCB, and McHenry County as defendants. The trial court dismissed Landfill's action for failure to exhaust administrative remedies and lack of subject matter jurisdiction. The first of the two actions this opinion addresses, case No. 86—265, is Landfill's appeal of that dismissal.

Following the trial court's dismissal, Landfill filed a motion with the PCB requesting that it declare that the site had been approved by operation of law for the same reasons raised in the trial court. On March 14, 1986, the PCB denied Landfill's motion and affirmed the county board's denial of site approval, but found that a fourth criterion had been met. Landfill appealed the PCB decision directly to this court as permitted by section 41 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1041). That appeal names the PCB, McHenry County, and the objectors as defendants. The appeal, along with the objectors' cross-appeals, is case number 86—369, the second of the two appeals currently before this court.

I

The first issue we must address is whether this court should review the dismissal of a declaratory action (case No. 86—265) when a second appeal which directly addresses the substantive issues involved in the declaratory action is currently pending. One of the objectors, Arthur T. McIntosh & Company (in a motion to dismiss which we have taken with this case), and the appellees argue that case No. 86-265 should be dismissed as moot. We agree.

■ An appellate court will not render an opinion on a moot question or an abstract proposition or enter a declaratory judgment which will not affect the rights of the parties before it. (*Johnson v. Quern* (1980), 90 Ill. App. 3d 151, 154-55; *Hilti, Inc. v. Griffith* (1978), 68 Ill. App. 3d 528, 534.) Additionally, "a declaratory judgment will not issue where another appropriate proceeding involving the same subject matter and issues is already pending." *Rasky v. Anderson* (1978), 62 Ill. App. 3d 633, 637.

■ We conclude that no useful purpose could be served by reviewing the trial court's dismissal of Landfill's declaratory action. Clearly, a reversal would not empower the trial court to enjoin a PCB hearing or decision which has already occurred. (See *Rasky v. Anderson* (1978), 62 Ill. App. 3d 633, 636.) Additionally, even if we were to conclude that the trial court should have decided whether site approval had occurred by operation of law, the second appeal before us

now is an "appropriate proceeding involving the same subject matter and issues." (62 Ill. App. 3d 633, 637.) We perceive that no prejudice will result to plaintiff because our review follows a PCB decision rather than one made by a trial court. We therefore dismiss case number 86—265.

## II

Landfill raises the following arguments on appeal: (1) because the county board and the PCB failed to follow the Act's mandatory procedures, Landfill was entitled to deem its site approved; (2) the county board's hearing was fundamentally unfair because certain evidence offered by Landfill was excluded; and (3) the PCB's decision was against the manifest weight of the evidence. In addition, Landfill filed a motion to dismiss the objectors' cross-appeals (which motion we have taken with the case), claiming that they have no standing to appeal.

■ We will first consider Landfill's motion to dismiss the cross-appeals. Due process of law does not encompass the right to appeal an administrative decision, and affording that right is the exclusive prerogative of the legislature. (*Board of Education v. Gates* (1974), 22 Ill. App. 3d 16, 20.) Section 41(a) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1041(a)) permits appeals only by those who have been denied a hearing, variance, or permit by the PCB—clearly not applicable to the objectors—or persons who are parties to a PCB hearing or are adversely affected by a final order or determination of the PCB. The PCB found that Landfill had met its burden in establishing four of the statutory criteria for site approval, but had failed to establish the remaining two. It then affirmed the county board's *denial* of Landfill's site approval request. The objectors oppose the landfill and thus cannot have been directly adversely affected by that decision. (See *Dolnick v. Redmond* (1972), 4 Ill. App. 3d 1037, 1040 (noting that the adverse effect must be direct to confer standing to appeal).) The objectors thus have no standing to appeal unless they were properly parties to the PCB hearing.

■ The PCB permitted the objectors to file cross-appeals of the county board's decision, concluding that failure to do so would frustrate its policy of reviewing all local decisions. Section 40.1 of the Act, which governs appeals to the PCB, provides:

"If the county board * * * refuses to grant [site] approval * * * the applicant may * * * petition for a hearing before the [PCB] to contest the decision * * *.

(b) If the county board * * * grants [site] approval * * * a third

party other than the applicant \*\*\* may petition the [PCB] \*\*\* for a hearing to contest the approval \*\*\*." (Ill. Rev. Stat. 1985, ch. 111½, pars. 1040.1(a), (b).)

The Act thus does not provide for a third-party appeal where the PCB has refused to grant site approval. (See *E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 41 (concluding that section 40.1 as written adequately recognizes and protects the rights of third parties).) The PCB is powerless to expand its authority beyond that which the legislature has expressly granted to it. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 557-58; see also *Schalz v. McHenry County Sheriff's Department Merit Com.* (1986), 113 Ill. 2d 198, 204.) We therefore conclude that the PCB improperly permitted the objectors to become parties to the proceeding before it. The objectors therefore have no standing to appeal to this court under section 41 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1041), and their cross-appeals are hereby dismissed.

We now address the substantive arguments raised by Landfill.

A

Landfill argues that the PCB's failure to follow statutory requirements entitled Landfill to deem its site approved. After the county board first refused to approve the site, Landfill appealed to the PCB on April 23, 1985. On July 5, 1985, the PCB published notice of the hearing which was held on July 25, 1985. Landfill argues that, in giving only 20-day notice of the hearing, rather than the 21 days the Act requires, the PCB violated a mandatory and jurisdictional provision of the Act and therefore failed to conduct a valid hearing within the required 120 days. (See Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1.) As a result, Landfill was entitled to deem its site approved.

Because we reject Landfill's argument, we find it unnecessary to consider the PCB's contentions that: (1) Landfill has no standing to raise the jurisdictional issue; (2) Landfill waived the objection by failing to raise it at the hearing; and (3) the subsequent hearing cured the notice deficiency.

Section 40.1 of the Act provides in pertinent part:

"If the county board \*\*\* refuses to grant [site] approval \*\*\* the applicant may \*\*\* petition for a hearing before the [PCB] to contest the decision \*\*\*. The [PCB] shall publish 21 day notice of the hearing on the appeal \*\*\*. \*\*\* If there is no final action by the [PCB] within 120 days, petitioner may deem the site location approved \*\*\*." Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1.

Landfill relies on two recent decisions as authority for its argument that the 21-day notice requirement is mandatory and jurisdictional. In *Illinois Power Co. v. Pollution Control Board* (1985), 137 Ill. App. 3d 449, the appellate court for the fourth district reviewed another section of the Act which required the PCB to give 21-day notice of a hearing when reviewing an EPA decision to deny a permit (Ill. Rev. Stat. 1983, ch. 111½, par. 1040). That section provided that unless the PCB took final action within 90 days the applicant was permitted to deem the permit issued. In *Illinois Power*, the PCB assigned the case to a hearing officer only 16 days before the expiration of the 90-day limit. Realizing that there was not enough time to issue the 21-day notice, the PCB decided to hold the hearing anyway, giving only five days' notice to the applicant. The court reviewed the statute and concluded that the notice requirement was mandatory and that the PCB could not ignore it to avoid the consequences of failing to render a decision within 90 days. The court declared the permits deemed issued. 137 Ill. App. 3d 449, 452.

In *Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, the appellate court, relying primarily on *Illinois Power*, concluded that no jurisdiction is conferred on a county board where a site approval applicant fails to give the full 14-day prior notice required by section 39.2 of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2 (b)), as the period was essential to allow for public comment. (139 Ill. App. 3d 588, 592-93.) However, as explained below, neither case is controlling under the circumstances presented here.

█▌ █ In interpreting statutory language, the court should attempt to give effect to the legislature's intent. (*In re Application of Rosewell* (1983), 97 Ill. 2d 434, 440.) While the word "shall" ordinarily indicates a mandatory intent, the rule is not inflexible and the context and purpose of the statute should control. (97 Ill. 2d 434, 440-41; *People v. Youngbey* (1980), 82 Ill. 2d 556, 562.) The stated purpose of the Act is "to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." (Ill. Rev. Stat. 1985, ch. 111½, par. 1002(b).) In addition, the supreme court has recognized the legislature's intent "to place decisions regarding the sites for landfills with local authorities." (*E. & E. Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 42.) We conclude that the legislature could not have intended the PCB's inadvertent and apparently harmless error to result in a deemed site approval. Such a rule would both eliminate any consideration of the site's suitability for a

landfill and deprive local authorities of the power given them by the statute. Landfill argues that the harm so caused would be minimal because the EPA must still approve the permit. However, the EPA's review is limited to assuring that the facility and equipment will satisfy the Act's requirements. (Ill. Rev. Stat. 1985, ch. 111½, par. 1039(a).) It does not determine whether the site location is an appropriate one.

The decisions in *Kane County Defenders* and *Illinois Power* were consistent with the legislature's purposes. In *Kane County*, the notice requirement was held to be jurisdictional because failure to give it would have jeopardized both the quality of the initial hearing and the public's sole opportunity to comment on the proposed landfill location. (*Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, 592-93.) The decision thus clearly favored a substantive determination of the suitability of the proposed landfill site.

■ In *Illinois Power*, the court recognized that, in addition to its public health concerns, the Act requires the PCB to expedite its review process. If the court had not deemed the permits issued under the circumstances presented there, it would effectively have allowed the PCB to avoid the consequences of an impending violation of the 90-day limit by disregarding the notice requirement. (*Illinois Power Co. v. Pollution Control Board* (1985), 137 Ill. App. 3d 449, 452.) By contrast, the 120-day deadline was in no danger of expiring here. Had the PCB recognized its error, it would have had ample time to give 21-day notice and still hold the hearing within the prescribed period. While we agree that the PCB may not disregard the 21-day notice requirement at will, we conclude that where, as here, the PCB's failure strictly to comply with it was inadvertent, resulted in no prejudice to the appellant, and did not permit the PCB to avoid another, clearly mandatory provision of the Act, the deficiency will not give the appellant the option of deeming the site approved.

B

Landfill next argues that it was entitled to deem its site approved because the county board failed to take "final action" on its request within 120 days of filing, as required by section 39.2(e) of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(e)). Landfill admits that the county board denied site approval 114 days after the initial filing (on March 20, 1985), but contends that the order was not "final" because, on review, the PCB held that the wrong evidentiary standard had been used and that it therefore had "no proper subject for review before it." By the time the PCB remanded the case to the county board for a new vote, the initial 120-day period had expired, and Landfill ar-

gues that the county board's subsequent decision therefore was untimely.

■ Again, we must look to the legislature's intent (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 479) and the purpose the statute is designed to serve (*Benjamin v. Cablevision Programming Investments* (1986), 114 Ill. 2d 150, 157) when interpreting its language. The legislature did not vest the county board with the authority to finally deny site approval, but instead allowed an applicant to appeal a county board's denial to the PCB. (Ill. Rev. Stat. 1983, ch. 111½, par. 1040.1.) We therefore conclude that the "final action" which a county board must take within 120 days of filing need only be sufficiently final to justify an appeal to the PCB. The county board's March 20, 1983, order clearly denied site approval and had the legal effect of precluding Landfill from obtaining a permit unless it filed a timely appeal with the PCB. Ill. Rev. Stat. 1983, ch. 111½, pars. 1039.2(f), 1040.1(a); see *Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic* (1970), 400 U.S. 62, 71, 27 L. Ed. 2d 203, 210, 91 S. Ct. 203, 209 ( an administrative agency's action is "final" for appeal purposes when review will not disrupt the orderly adjudication process and legal consequences will result from the agency's action).

■ The fact that the PCB concluded that the county board had applied an improper standard did not cause a retroactive expiration of the 120-day limit because an erroneous administrative order is not void on its face and from its inception as if subject matter jurisdiction had been lacking, but is merely voidable in an appropriate review proceeding. (See *Newkirk v. Bigard* (1985), 109 Ill. 2d 28, 37-39, *cert. denied* (1986), 475 U.S. 1140, 90 L. Ed. 2d 335, 106 S. Ct. 1789.) Therefore, despite the language used by the PCB in remanding the case, the county board entered a final and reviewable order on March 20, 1985, which was in fact properly reviewed and found to be erroneous. It would be patently unreasonable to interpret the Act to require the entire decision, review, remand, and ultimate disposition process to be completed within a single 120-day period, as the Act clearly gives both the county board and the PCB separate deadlines within which they must take "final action." (Ill. Rev. Stat. 1983, ch. 111½, pars. 1039.2(e), 1040.1(a).) We therefore conclude that the county board took "final action" within 120 days of Landfill's initial site approval request.

C

■ Landfill next argues that the county board hearing was fun-

damentally unfair because the hearing officer excluded some of its evidence. (See Ill. Rev. Stat. 1985, ch. 111½, par. 1040.1 (requiring the PCB to consider the fundamental fairness of the county board's procedures).) The county board's hearing officer excluded those portions of the testimony of Landfill's expert hydrogeologist which related to his recommendations for improving the proposed Landfill design, concluding that the testimony would unfairly surprise opponents of the Landfill. The recommendations were later elicited to Landfill's satisfaction by several board members who questioned the expert. It is unclear whether the county board initially considered the recommendations, however, because the hearing officer instructed the board not to consider Landfill's proposed changes to its application, but stated that he was not ruling on the propriety of the board's requiring such changes. The PCB reviewed that first county board decision and remanded for other reasons, concluding that while exclusion of the evidence had not affected the fundamental fairness of the hearing, it was ill-advised.

On remand, the county board apparently did consider the excluded evidence which was contained in the record, stating that its final conclusions that three of the required criteria had not been met would not be altered by it. We therefore find it unnecessary to decide whether the initial exclusion of the testimony was error, because the testimony was in fact presented to and considered by the county board before it made its second decision, which is on appeal here. We therefore must conclude that any error the county board may have made was harmless. See *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 1083.

### D

Landfill's final contention is that the decisions of the county board and the PCB were against the manifest weight of the evidence. The PCB determined that Landfill had met its burden in establishing four of the six statutory criteria, but affirmed the county board's refusal to approve the site, because it had failed to meet its burden on the remaining two. We therefore need only consider the evidence presented with respect to those criteria. They are:

"(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

\* \* \*

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows." Ill. Rev. Stat. 1983, ch. 111½, pars. 1039.2(a)(ii), (a)(vi).

■■■ A reviewing court will not reverse an administrative agency's decision unless it is against the manifest weight of the evidence. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471; *Ryan v. Verbic* (1981), 97 Ill. App. 3d 739, 741.) Its function is not to reweigh the evidence or to substitute its judgment for that of the agency. *Sheldon v. Edgar* (1985), 131 Ill. App. 3d 489, 491; *Fitzgerald v. Illinois Liquor Control Com.* (1980), 82 Ill. App. 3d 1018, 1022.

At the hearing, three experts testified for Landfill regarding the health and safety ramifications of the proposed landfill—the design engineer, an expert hydrogeologist, and a geotechnical engineer. They concluded that the landfill would have no adverse effect on the safety of the surrounding communities. Experts for the objectors, however, testified that laboratory soil permeability tests used by Landfill's experts provided insufficient data to conclude that the soil was sufficiently impermeable to prevent leakage and pollution of the surrounding soil. One expert, a soil water engineer, concluded that there was a continuous layer of potentially water-bearing soil running across the proposed site. He stated that deeper monitoring wells, and extensive quality control in the excavation process, neither of which were provided for in the proposed design, were necessary to ensure safety. Another witness, a professor with expertise in geology and hydrogeology, testified to the necessity of field tests and deeper boring samples. He stated that the data accumulated by Landfill's experts were insufficient to assure that the soil at the proposed site would not subside. A third expert, a professor of civil engineering, concluded that the rate at which water collected in the boring holes indicated that the soil was more permeable by several orders of magnitude than the laboratory test results for those boring samples indicated. In addition, Landfill's own expert hydrogeologist stated that leachate, a potential pollutant, would probably continue to form and collect at the site long after the facility has closed and the three year post-closure monitoring period has ended, *i.e.*, long after Landfill stops removing it.

Landfill argues that laboratory tests for soil permeability are accepted by the EPA, as is the number of boring samples it used, and that those tests indicate that the soil's impermeability exceeds the EPA standards. Additionally, PCB regulations require only three years of post-closure care, the depth of the Landfill's proposed clay liner is well in excess of EPA requirements, and the design and proposed operation meet or exceed all State requirements for landfills. Landfill contends that, where a proposed landfill meets or exceeds State design and operation requirements, a county board may not reject the site by imposing other, higher standards of design and opera-

tion which the applicant has failed to meet. We disagree.

■■ Landfill relies on isolated statements made by this court in two recent decisions to support its position. In *M.I.G. Investments, Inc. v. Environmental Protection Agency* (1986), 151 Ill. App. 3d 488, 495, this court stated that "the role of local entities is not meant to be unlimited. The primary thrust of the pertinent provisions is to insure a degree of local control over the location of solid-waste disposal facilities." That statement, however, simply explained the court's conclusion that county board approval is not required for the vertical expansion of an already existing landfill, because its location is not in issue. Here, the Landfill's location is clearly in issue, and the Act has expressly vested the county board with the authority to consider the facility's design and operation to determine whether they will adequately protect the public's health and safety. Ill. Rev. Stat. 1983, ch. 111½, par. 1039.2(a)(ii).

■■ Landfill additionally cites *County of Lake v. Pollution Control Board* (1983), 120 Ill. App. 3d 89, 100, which stated that the Act "does not vest the County Board with permitting authority. Any conditions the County Board imposes are not to be 'inconsistent with regulations promulgated by the [PCB].' [Citation.]" Landfill's reliance is misplaced, however. In *County of Lake* this court held that a county board could not condition site approval on the EPA's adoption and enforcement of certain conditions in issuing the applicant a permit, because the Act gives the EPA the exclusive power to issue permits. (120 Ill. App. 3d 89, 99.) The court concluded, however, that the county board was fully authorized to impose and enforce its own conditions on granting site approval (120 Ill. App. 3d 89, 100)—including technical requirements which have historically been within the EPA's realm of responsibility (120 Ill. App. 3d 89, 98-99). We conclude that a county board is equally within its statutory authority to base its rejection of a site on similar technical criteria where it determines that the proposed landfill presents a potential health hazard to the surrounding community, notwithstanding the applicant's complete compliance with the EPA's and PCB's technical requirements. The record therefore amply supports the county board's conclusion that Landfill has not met the Act's public health and safety criterion.

■■ The final issue is whether Landfill met the traffic pattern criterion. The only expert to testify on this issue was Brian Johnson, a professional traffic engineer. The site is located on Route 47, a two-lane, major arterial route, which will be used by trucks entering and leaving the site. The speed limit on Route 47 is 55 miles per hour, and there will be no traffic signals at the site entrance. Mr. Johnson testi-

fied that an estimated 80 to 85 trucks would use the site per day and that 85% to 90% of them would approach the site from the north and would have to make a left turn from Route 47 into the site. For that reason, he proposed developing a protected left turn lane for the vehicles. However, his plans did not include a deceleration lane for traffic approaching from the south and making a right turn into the site, because he concluded that even during peak traffic periods, only two trucks will make that turn over a one-hour period.

We believe that the county board could properly have concluded that even one or two trucks slowing enough to make a right-hand turn on a two-lane, 55-miles-per-hour roadway presented a substantial hazard to existing traffic. For that reason, we conclude that the PCB and the county board's findings that Landfill had not met its burden in meeting the traffic pattern criterion were not against the manifest weight of the evidence.

For the foregoing reasons, we affirm the PCB's decision.

Affirmed.

HOPF and DUNN, JJ., concur.