WASTE MANAGEMENT OF ILLINOIS, INC., Petitioner, v. THE POLLU-TION CONTROL BOARD *et al.*, Respondents.

First District (6th Division)   No. 1—89—2541

Opinion filed August 28, 1992.

Pedersen & Houpt, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Michelle D. Jordan, Matthew J. Dunn, and Patricia E. Collins, Assistant Attorneys General, of Chicago, of counsel), for respondent Pollution Control Board.

Larry M. Clark, of Mundelein, for respondent Village of Bensenville.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, Waste Management of Illinois, Inc. (Waste Management), sought local site approval from the Village of Bensenville (Village) for construction of a solid waste transfer station pursuant to section 39.2 of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2). Following an evidentiary hearing, the Village denied the request for site approval, and Waste Management appealed the Village's decision to the Illinois Pollution Control Board (PCB). Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1.

On review, the PCB upheld the Village's denial of site approval for the waste transfer station. Following the PCB's denial of its motion to reconsider, Waste Management filed its petition for review with this court. Ill. Rev. Stat. 1987, ch. 111½, par. 1041.

On July 20, 1990, this court issued an opinion which held that Waste Management's application for a permit for the proposed waste transfer station was deemed approved due to the failure of the PCB to issue its opinion within the 120-day time period mandated by the statute. (Waste Management of Illinois, Inc. v. Pollution Control Board (1990), 201 Ill. App. 3d 614, 558 N.E.2d 1295.) The PCB appealed that decision to the Illinois Supreme Court, which reversed, holding that Waste Management's permit application was not deemed approved because the July 13, 1989, order of the PCB was a final action as contemplated by the Act. Waste Management of Illinois, Inc. v. Illinois Pollution Control Board (1991), 145 Ill. 2d 345, 585 N.E.2d 606 (opinion modified upon denial of rehearing, February 3, 1992).

Upon remand from the Illinois Supreme Court, we now address Waste Management's claim that its permit application for the proposed waste transfer station was improperly denied based upon its failure to prove sufficient need.

The record reveals that on July 22, 1988, Waste Management filed with the Village a proposal for construction of the solid waste transfer station on approximately seven acres of property located immediately east of Waste Management's Garden City disposal plant, a waste hauling company, in the Village of Bensenville. The transfer station was designed to receive, compact, and transfer to sanitary landfills

nonhazardous and nonspecific refuse. Its purpose was to make waste hauling in the service area more efficient and cost effective. The facility was also to be used as a processing center for recycling aluminum, paper, glass, wood skids, and cardboard. The transfer station operations, including unloading, compacting, and loading, were to be completely enclosed, minimizing or eliminating noise, odors, dirt, and litter.

On November 10, 1988, the Village held a hearing on the proposal for the waste transfer station. In addition to the members of the Village board, counsel for Waste Management and for the Village were present. At the hearing, Waste Management presented seven witnesses who testified in support of the application. No testimony or other evidence was presented in opposition to the proposal.

The evidence offered by Waste Management to establish the necessity for the waste transfer station consisted of the testimony of Edward Evenhouse, general manager of the Garden City disposal plant (Garden City). Evenhouse testified that the waste transfer station was necessary due to three factors: (1) the scarcity of available landfill space in the vicinity of the service area; (2) the imposition of a quota system by the nearest available landfill; and (3) the then-present inefficiencies of transporting waste from the service area to existing disposal sites.

On cross-examination, Evenhouse stated that Garden City did not service all of the waste needs in the area, but he was unable to testify as to the percentage of waste Garden City did handle within the service area. He also acknowledged that the application for site location approval did not include an economic analysis of the proposal.

Evenhouse testified further that the waste collected by Garden City was taken to various landfills and waste transfer stations including those located at Hooker Street in Chicago, Lake landfill in Northbrook, the Groot transfer station, Congress Development landfill, Mallard Lake, and Woodland and Settlers Hills. Evenhouse was unable to testify as to the amount of waste that was being transported to the Lake landfill, but acknowledged that Lake landfill had obtained a three-year extension of its operations. He could not state the projected life of the Congress Development landfill, and although he testified that his facility had imposed quotas limiting the amount of waste it would accept from Garden City, Evenhouse did not know the maximum number of loads it would accept. He also stated that his information regarding the projected closing of the Mallard Lake landfill in 1993 was derived from newspaper articles and that the Mallard Lake landfill had never refused to accept waste from Garden City.

Evenhouse also testified that the Mallard Lake landfill was about eight miles from Garden City and that the Congress Development facility was about four miles away. Evenhouse indicated that these were reasonable distances to drive a collection truck to unload. He testified that he hoped the construction of the transfer station would improve the efficiency of Garden City's operations by allowing for the elimination of some of its collection trucks, and he stressed the importance of recycling waste. Evenhouse stated that the proposed transfer station was designed to accommodate a maximum of 12 loads per day, but acknowledged that the application for site approval did not limit Garden City to 12 loads per day. He also indicated that Garden City could initiate recycling operations on this site without obtaining approval from the Village.

The Village denied the application for site approval, finding that Waste Management had not established that the waste transfer station was necessary or that the impact on existing traffic flow would be minimal. (Ill. Rev. Stat. 1987, ch. 111½, pars. 1039.2(a)(i), (vi).) Thereafter, Waste Management filed its petition for review with the PCB. (Ill. Rev. Stat. 1987, ch. 111½, par. 1040.1(a).) Several months later, the PCB issued an order affirming the denial by the Village of the application for local site approval for the waste transfer station. In a subsequent opinion, the PCB upheld the Village's denial of site approval on the basis that Waste Management had not established that the transfer station was necessary to accommodate the waste needs of the area it was intended to serve.

Upon denial of its motion for reconsideration by the PCB, Waste Management filed the present petition for review with this court.

The Village found that Waste Management had failed to establish that the waste transfer station was necessary, and the PCB affirmed that finding. The role of a reviewing court on administrative review is limited to a determination of whether the administrative agency's decision was contrary to the manifest weight of the evidence. *McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 100, 506 N.E.2d 372, 379.

■ Section 39.2(a)(i) of the Act provides that the Village shall approve the site location suitability for a new regional pollution control facility only where the facility is necessary to accommodate the waste needs of the area it is intended to serve. Ill. Rev. Stat. 1987, ch. 111½, par. 1039.2(a)(i); *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1031, 530 N.E.2d 682, 689; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1984), 123 Ill. App. 3d 1075, 1083-84, 463 N.E.2d 969, 976.

Although a petitioner need not show absolute necessity, it must demonstrate that the new facility would be expedient as well as reasonably convenient. (*Clutts v. Beasley* (1989), 185 Ill. App. 3d 543, 546, 541 N.E.2d 844, 845; *A.R.F. Landfill, Inc. v. Pollution Control Board* (1988), 174 Ill. App. 3d 82, 91, 528 N.E.2d 390, 396; *Waste Management of Illinois, Inc.*, 123 Ill. App. 3d at 1084.) The petition must show that the landfill is reasonably required by the waste needs of the area, including consideration of its waste production and disposal capabilities. *Waste Management of Illinois, Inc.*, 175 Ill. App. 3d at 1031; *A.R.F. Landfill*, 174 Ill. App. 3d at 91; *Waste Management of Illinois, Inc.*, 123 Ill. App. 3d at 1084.

The evidence offered by Waste Management to establish the necessity of the waste transfer station consisted of the testimony of Edward Evenhouse, the general manager of Garden City. Although Evenhouse concluded that the waste transfer station was necessary, he acknowledged that Garden City did not service all of the waste needs in the area and that he was unable to testify as to the percentage of waste Garden City did handle within the service area. He also stated that the application for site location approval did not include an economic analysis of the proposal.

In addition, Evenhouse stated that Lake landfill had received a three-year extension of its operations, but could not testify as to the projected life of the Congress Development landfill. Evenhouse was also unable to state the maximum number of loads Congress Development would accept from Garden City. He further admitted that his information regarding the projected closing of the Mallard Lake landfill in 1993 was derived from newspaper articles and that the Mallard Lake landfill had never refused to accept waste from Garden City.

Evenhouse testified that although Mallard Lake and Congress Development landfills were located within reasonable distances from Garden City, he hoped the construction of the proposed transfer station would improve the efficiency of Garden City's operations by allowing for the elimination of some of its collection trucks. Evenhouse stressed the importance of recycling, but acknowledged that Garden City did not require approval from the Village for recycling operations.

■ We find that improvement in the efficiency of Garden City's operations by elimination of some collection trucks is inadequate to meet the statutory requirement of necessity. Thus, the evidence presented by Waste Management was insufficient to show that the waste transfer station was reasonably required by the waste needs of the area and did not adequately address the waste production and dis-

posal capabilities in the service area. Based upon the record before us, we hold that the Village's decision, affirmed by the PCB, as to the necessity of the waste transfer station was not against the manifest weight of the evidence.

For the foregoing reasons, the order of the PCB is affirmed.

Order affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.