EUGENE DALY *et al.*, Petitioners-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

First District (4th Division)   No. 1—93—2671

Opinion filed June 30, 1994.—Rehearing denied July 28, 1994.

HOFFMAN, P.J., dissenting.

Stefan A. Noe, of Citizens for a Better Environment, of Chicago, for petitioners.

Mark R. Sterk, of Odelson & Sterk, of Evergreen Park, and James T. Harrington, of Ross & Hardies, of Chicago, for respondents.

JUSTICE CAHILL delivered the opinion of the court:

Petitioners, a group of citizens, appeal a decision of the Illinois Pollution Control Board (the Board) to allow construction of a solid waste incinerator and recycling plant in the Village of Robbins. Under the Environmental Protection Act (the Act) (415 ILCS 5/1 *et seq.* (West 1992)), incinerator and recycling plants are dubbed pollution control facilities. Their locations are governed by restrictive guidelines, and the local government where the plant is to be located must conduct a public hearing, develop a record, and submit its recommendation to the local board for approval. (415 ILCS 5/39.2 (West 1992).) The public hearing must be fundamentally fair, and one of the guidelines that must be met is that the location of the plant be flood-proofed. Petitioners contend on appeal that the public hearing held in this case was fundamentally unfair, citing three reasons in their brief, and that the village board acted arbitrarily in finding that the plant and location met the flood-proof guideline. We affirm.

The Robbins Resource Recovery Company (RRRC) filed an application in 1992 with the Village of Robbins board of trustees for approval of a pollution control facility to be located in Robbins. The Robbins village board held a public hearing on December 22, 1992, and on February 2, 1993, approved the application. Appellants then petitioned the Board for review. (See 415 ILCS 5/40.1 (West 1992).) Section 40.1 of the Act requires the Board, in reviewing local approval, to consider the "fundamental fairness of the procedures used *** in reaching its decision." (415 ILCS 5/40.1 (West 1992).) The Board ruled that the hearing was fundamentally fair and that the proposal met statutory requirements. One Board member dissented.

Appellants now appeal to this court under section 41(a) of the Act. 415 ILCS 5/41(a) (West 1992).

■ We first consider whether the village board held a fundamentally fair hearing. Fundamental principles of due process apply to administrative proceedings. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1036, 530 N.E.2d 682, 693.) We held in *E&E Hauling, Inc. v. Pollution Control Board* (1983), 116 Ill. App. 3d 586, 451 N.E.2d 555, *aff'd* (1985), 107 Ill. 2d 33, 481 N.E.2d 664, that although there was no constitutional right to a fair hearing, the Act requires hearing procedures that meet due process standards of fundamental fairness. (*E&E Hauling*, 116 Ill. App. 3d at 596, 451 N.E.2d at 564.) Our supreme court held in *Telcser v. Holzman* (1964), 31 Ill. 2d 332, 201 N.E.2d 370, that "procedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding." (*Telcser*, 31 Ill. 2d at 339, 201 N.E.2d at 373.) But a fair hearing before an administrative

agency must include the opportunity to be heard, the right to cross-examine adverse witnesses, and impartial rulings on the evidence. *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 606 N.E.2d 1111.

■ Appellants first argue the hearing was unfair because a rally in support of the plant was held before the hearing began. At 6:00 p.m. on December 22, 1992, a group held a rally in the auditorium of the Robbins Recreational Training Center. The hearing was scheduled to begin there at 6:30 p.m. Proponents of the plant handed out buttons, hats, and literature. Two elected village officials and a local minister spoke to the people assembled about the benefits of the plant to the community. They also made racial remarks about those who opposed it.

At 6:40 p.m. the hearing officer, a lawyer appointed by the village board, entered the auditorium, went to the podium, and began the hearing. He called the role of the board of trustees, and the mayor of the Village of Robbins made remarks of welcome. The mayor said the village board would base its decision on the record alone. The hearing officer then explained the rules contained in an ordinance passed by the village board that would govern the conduct of the public hearing. The rules were distributed to everyone at the hearing.

RRRC offered expert testimony to support its belief that the plant met statutory requirements. Experts were cross-examined until 11:30 p.m. The hearing officer then changed the order of the hearing set out in the rules. He proposed to allow opponents of the plant to testify before proponents. In the alternative, he offered to recess the hearing until 10 a.m. the next day. No opponent asked to recess the hearing. Testimony ended at about 2:30 a.m. on December 23, 1992.

Because the rally continued past the scheduled starting time of the hearing, appellants argue that proponents at the rally were permitted to "testify" first and in violation of the board's rules and procedures which listed advocates as ninth on the agenda. The Board found that the rally was not part of the hearing.

On review, we are to determine whether the Board's decision is against the manifest weight of the evidence. (*McHenry County Landfill, Inc. v. Environmental Protection Agency* (1987), 154 Ill. App. 3d 89, 100, 506 N.E.2d 372, 379.) There is ample evidence to support the Board's finding that the rally was not part of the hearing. The mayor's opening statements and the hearing officer's actions show a clear break between the rally and the public hearing.

The Board also found that the record did not support the allegation that village board members participated in the rally. Appellants argue that this finding supports their contention that the Board

misapplied the law and imposed a requirement that petitioners prove the village board members participated in the rally to establish a lack of fairness. We do not accept the inference. The Board made this finding of fact to support its ruling that the rally was not part of the hearing. The finding was not made to suggest that a prehearing rally could only be considered unfair if village board members were present or participated.

Appellants also contend that the Board ignored evidence that the "rally created an environment which defeated the purpose of the creation of a full and complete record." They contend some opponents decided not to attend the hearing when they learned about the rally. One witness testified before the Board that she decided not to speak at the hearing when she was threatened at the hearing by a person who attended the rally.

The Board ruled that there was no evidence that the "opponents' opportunity to be heard in the public meeting were [sic] abrogated." The record shows that each appellant who completed a form to testify did, in fact, testify. Although one witness told the Board she did not testify because she was threatened, the threat occurred at the hearing, not the rally. When the hearing officer began the hearing, he stated that anyone who caused a disturbance would be arrested. Police were present before and during the hearing. Appellants have offered no evidence of events at the rally that discouraged speaking at the hearing.

■ Appellants next contend that the hearing was unfair because the hearing officer stated that any person could submit "sworn statements" within 30 days after the hearing. Appellants argue that sworn statements are not required under the Act.

The Board acknowledged that section 39.2(c) of the Act does not require written statements to be sworn. The Board found, however, that the hearing officer's use of the term "sworn statement" did not chill opponents' opportunity to make written statements about the proposed plant. We agree. The context of the hearing transcript reveals that the use of the word "sworn" is an example of the sort of ornament lawyers tend to use when talking. The hearing officer through the evening noted that participants could furnish statements for the record. He referred to "sworn statements" four times; at least three times he referred to "statements" without using the word "sworn." None of the written statements received during the 30-day comment period were sworn. Appellants offered no evidence that anyone was confused or did not submit a written statement as a result of the hearing officer's use of the words "sworn statement."

■ Finally, appellants argue the hearing was fundamentally

unfair because it was held with haste. They claim that opponents did not participate fully in the creation of the record because of a five-minute limitation on testimony and the late hour the hearing concluded.

The Board rejected the argument and the record supports its position. The record shows that both opponents and proponents were held to five minutes initial speaking time, so that everyone had the opportunity to speak. All who wished were allowed to resume after each person was allowed five minutes to speak. A second court reporter was provided in an upstairs room for those who wanted to continue their testimony, but did not want to stay until everyone spoke. This testimony was made part of the official record. Although the hearing lasted until the morning hours of the next day, the hearing officer first offered to recess the hearing. None of the opponents wanted to do so. He also changed the order of proceedings to allow opponents to testify before proponents. We find the Board's ruling that the hearing was fundamentally fair is not against the manifest weight of the evidence.

In a dissent, one member of the Board found that the hearing was conducted in an atmosphere that was not "content neutral" and that it would be hard for him "to believe that any sitting Illinois judge would allow the use of the judge's courtroom for a similar rally *** just before the opening of a civil trial." The phrase "content neutral" aside, which has a certain fuzzy nuance that suggests fair play, while at the same remaining hopelessly vague when subjected to legal analysis, the dissenter overlooks what our supreme court recognized in *Telcser* when it distinguished the procedural informality of administrative hearings from the traditional decorum expected in judicial proceedings. There is nothing in the record to suggest that the opponents were denied the right to be heard at the hearing that followed the rally, prohibited from cross-examining proponents, or that the rulings on the evidence were anything less than impartial. See *Abrahamson*, 153 Ill. 2d 76, 606 N.E.2d 1111.

■ The second issue we address is whether the village board complied with the siting approval process. Appellants contend that one of the nine statutory requirements for siting approval—flood-proofing—was not met, and that the village board acted arbitrarily when it failed to include in its ordinance the express condition that the site be flood-proofed.

Section 39.2(a) of the Act states that "local siting approval shall be granted only if the proposed facility meets the following criteria: *** (iv) the facility is located outside the boundary of the 100 year flood plain or the site is flood-proofed." 415 ILCS 5/39.2(a)(iv) (West 1992).

The ordinance states, "The facility is designed to be flood-proofed." The precondition of flood-proofing emerges from the record and the language referring to it in the ordinance. There would be little point in taking detailed evidence on flood-proofing and specifically finding that the design meets flood-proofing requirements if the village did not intend it as a precondition. So we believe that by including the flood-proofing provision in the ordinance, the village board recognized that a condition precedent for site suitability is that the facility be flood-proofed.

The dissent appears to argue that the use of the word "facility" in the ordinance is insufficient to insure that the land, or "site," will be flood-proofed, as well as the plant, or "facility." But the record before the village makes clear that the comprehensive plan for flood-proofing submitted to it included the plant and the land—and it is that plan, taken in its entirety, that the village found to be in compliance with the statute. To make a fine point of the distinction between "facility" and "site" is unnecessary. When construing a statute a court should consider the purposes to be achieved by the law. (*In re Estate of Callahan* (1991), 144 Ill. 2d 32, 43, 578 N.E.2d 985, 989.) The goal of the Illinois statutory scheme governing the planning, location, and construction of pollution control facilities is the protection and integrity of the environment. Achievement of that goal is evident in the findings and order of the Board, and its conclusion that the flood-proofing requirements pass muster is one to which we can safely defer.

Affirmed.

THEIS, J., concurs.

PRESIDING JUSTICE HOFFMAN, dissenting:

Local siting approval of a new regional pollution control facility is governed by section 39.2 of the Environmental Protection Act (Act), which provides that local authorities shall approve site suitability only in accordance with the criteria set forth therein. (Ill. Rev. Stat. 1991, ch. 111½, par. 1039.2.) It is only when the governing body of a municipality finds all of the criteria of the statute have been satisfied that site approval can be granted. One of the criteria set forth in section 39.2 of the Act is the requirement that the facility must be located outside the boundary of the 100-year flood plain or the site must be flood-proofed. Ill. Rev. Stat. 1991, ch. 111½, par. 1039.2(a)(iv).

The issue central to the disposition of this appeal is whether the

ordinance of the Village of Robbins (Village) which approved the siting of a new regional pollution control facility within its borders as proposed by the application of the Robbins Resource Recovery Company (RRRC) complies with the provisions of section 39.2 of the Act. I believe that it does not and therefore I dissent.

The site of the facility proposed by the RRRC and approved by the village is partially located within the boundary of the 100-year flood plain. On this issue there is no dispute. Consequently, to satisfy the criteria set forth in section 39.2(a)(iv) of the Act, the *site* must be flood-proofed. Section 3.43 of the Act defines the word "site" as "any location, place, tract of land, and facilities, including but not limited to buildings, and improvements used for purposes subject to regulation or control by *** [the] Act or regulations thereunder." (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1003.43.) The only mention of compliance with the criteria of section 39.2(a)(iv) of the Act within the village's site approval ordinance is set forth in paragraph 18, which states: "The Facility is designed to be flood-proofed."

Common sense dictates that a site within a flood plain would not be flood-proofed until after it is approved and permits for construction of a facility on the site have been issued. However, before a local authority can approve the siting of a new regional pollution control facility, each of the statutory criteria must be satisfied. (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1987), 160 Ill. App. 3d 434, 513 N.E. 2d 592.) It appears that the dilemma can be solved only when local siting approval is conditioned upon the site being flood-proofed. (See *Tate v. Pollution Control Board* (1989), 188 Ill. App. 3d 994, 554 N.E. 2d 1176.) Requiring that local siting approval of a facility that is to be located within the flood plain be conditioned upon the site being flood-proofed serves two purposes. First, it avoids an absurd construction of section 39.2(a)(iv) that would require an applicant to purchase and flood-proof a tract of land before ever obtaining approval for the construction of a new regional pollution control facility upon it. Second, it ensures compliance with the criteria of section 39.2(a)(iv), which mandates that the site of a facility located within the flood plain will be flood-proofed. Section 39.2(e) provides a local governing body with the authority to impose such conditions upon its siting approval as may be necessary to accomplish the purposes of that section of the Act. Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1039.2(e).

Because the village's site approval ordinance is silent on the flood-proofing of the *site* as mandated by the statute referencing only a *facility* that is designed to be flood-proofed and fails to condition ap-

proval upon flood-proofing of the site, I believe that the criteria of section 39.2(a)(iv) of the Act have not been satisfied. Consequently, I would reverse.