MICHAEL TURLEK *et al.*, Petitioners-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

First District (3rd Division)   No. 1—94—2829

Opinion filed July 26, 1995.

Keith I. Harley, of Chicago Legal Clinic, Inc., of Chicago, for petitioners Michael Turlek, Lillian Smejkal, and John Lathrop.

Stefan A. Noe, of Chicago, for petitioner Citizens for a Better Environment.

Elpidio Villarreal and David C. Layden, both of Sonnenschein, Nath & Rosenthal, of Chicago, for petitioners Patricia J. Bartleman, Nanci Katz, and Michelle Schmits.

Robert M. Olian and Mark Chutkow, both of Sidley & Austin, of Chicago, for respondent West Suburban Recycling and Energy Center, Inc.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Petitioners filed petitions with the Illinois Pollution Control Board (the Board) challenging the Village of Summit's (Summit's) December 6, 1993, decision granting local siting approval to West Suburban Recycling Center, Inc. (WSREC), to construct an incinerator in Summit, Illinois. In an opinion and order dated May 5, 1994, the Board affirmed Summit's approval of WSREC's siting application and denied petitioners' motions to reconsider.

On appeal, petitioners raise issues as to whether the Board erred in determining: (1) Summit had jurisdiction to consider WSREC's 1993 application; (2) the proposed incinerator was necessary to serve the intended area's waste disposal needs; (3) the proposed incinerator satisfied the Environmental Protection Agency's (EPA's) flood-proofing criterion; and (4) the proper legal standard was applied in denying petitioners' motions for reconsideration. We affirm the Board's decision.

WSREC filed an application with Summit seeking siting approval for a municipal waste-to-energy facility. After public hearings, Sum-

mit granted WSREC siting approval on October 19, 1992. On February 25, 1993, the Board reversed Summit's approval, citing Summit's failure to make WSREC's application available to the public.

The Board remanded the siting process to Summit with instructions that WSREC could reinstitute its application without further amendment within 35 days. On March 26, 1993, WSREC appealed the Board's order to this court and filed with the Board a motion to stay its order pending this court's ruling. The Board denied WSREC's motion to stay on April 8, 1993.

On June 8, 1993, WSREC mailed legal notices to property owners in the Summit area indicating its intent to file a new application with Summit for a larger, but substantially similar, facility located on the same property. WSREC published this notice on June 10, 1993.

On June 14, 1993, this court dismissed WSREC's appeal of the Board's February 1993 order for lack of jurisdiction, the order not being final. On June 25, 1993, WSREC filed its new application, for the larger facility, with Summit. Public hearings were held on September 28 and 29, 1993, after which Summit approved WSREC's application on December 6, 1993.

On January 7 and 10, 1994, petitioners filed separate petitions for review of Summit's decision with the Board. A hearing on the consolidated petitions was held on March 1, 1994, and the Board affirmed Summit's decision granting WSREC siting approval on May 5, 1994. On June 7 and 9, 1994, petitioners filed separate motions for reconsideration of the Board's May 5 order, which were denied on July 21, 1994. Petitioners appealed the Board's order to this court on August 25, 1994.

■ Petitioners first argue that Summit lacked jurisdiction to entertain WSREC's 1993 application. Summit's authority to consider a siting request for a regional pollution control facility is governed exclusively under section 39.2 of the Environmental Protection Act (415 ILCS 5/39.2 (West 1992)). Section 39.2 prohibits an applicant from filing a request for siting approval which is substantially the same as a request which was disapproved pursuant to a finding against the applicant under one of nine statutory criteria[1] within the preceding two years. (415 ILCS 5/39.2(m) (West 1992).) Petitioners argue that WSREC filed its 1993 request while its "substantially similar" 1992 request was

---

[1]Section 39.2(a) states, in pertinent part:

"An applicant for local siting approval shall submit sufficient details describing the proposed facility to demonstrate compliance, and local siting approval shall be granted only if the proposed facility meets the following criteria:

still "pending" in violation of section 39.2, thereby preventing Summit from considering the second, 1993 application.

WSREC's 1992 application was approved, not disapproved, by Summit. The prohibition upon which petitioners rely relates to subsequent applications following a disapproved application. The Board reversed Summit's approval because the village violated the procedural requirement of adequate public notice. Even assuming that Summit had denied WSREC's 1992 application on the basis of inadequate public notice, the quality of public notice is not one of the nine substantive criteria contained in subsection (a) of section 39.2 which preclude consideration of a second application.

Petitioners cite *Laidlaw Waste Systems (Madison), Inc. v. Pollution Control Board* (1992), 230 Ill. App. 3d 132, 595 N.E.2d 600, as additional support to their jurisdictional challenge. In *Laidlaw*, a waste company filed a second application within two years of a substantially similar ap-

---

(i) the facility is necessary to accommodate the waste needs of the area it is intended to serve;

(ii) the facility is so designed, located and proposed to be operated that the public health, safety and welfare will be protected;

(iii) the facility is located so as to minimize incompatibility with the character of the surrounding area and to minimize the effect on the value of the surrounding property;

(iv) the facility is located outside the boundary of the 100 year flood plain or the site is flood-proofed;

(v) the plan of operations for the facility is designed to minimize the danger to the surrounding area from fire, spills, or other operational accidents;

(vi) the traffic patterns to or from the facility are so designed as to minimize the impact on existing traffic flows;

(vii) if the facility will be treating, storing or disposing of hazardous waste, an emergency response plan exists for the facility which includes notification, containment and evacuation procedures to be used in case of an accidental release;

(viii) if the facility is to be located in a county where the county board has adopted a solid waste management plan consistent with the planning requirements of the Local Solid Waste Disposal Act or the Solid Waste Planning and Recycling Act, the facility is consistent with that plan; and

(ix) if the facility will be located within a regulated recharge area, any applicable requirements specified by the Board for such areas have been met." 415 ILCS 5/39.2(a) (West 1992).

plication rejected by Madison County "for the reason that the applicant had failed to satisfy several of the criteria contained in subsection (a) of section 39.2." (*Laidlaw Waste Systems*, 230 Ill. App. 3d at 133.) Thus, while petitioners are correct in noting that *Laidlaw* and section 39.2(m) prohibit a refiling within two years following disapproval of a substantially similar application, these are not the facts before this court. WSREC's 1992 application was approved, and reversed by the Board on grounds unrelated to those contained in section 39.2(a). There is additional doubt as to whether the two applications are "substantially similar" since WSREC's first application proposed a facility capable of disposing 1,000 tons of waste per day, while its subsequent proposal envisioned an 1,800-ton-per-day facility.

██ Petitioners advance the further argument that section 39.2, when read in conjunction with sections 40.1 and 41(a), does not provide a basis for local authorities to have jurisdiction over two pending applications for the same site from the same applicant. A literal reading of these sections, consistent with our obligation to give statutory language its plain and ordinary meaning (*Laidlaw Waste Systems*, 230 Ill. App. 3d at 135), reveals no prohibition against an applicant having two concurrent applications. In fact, the recent Board decision in *Daly v. Village of Robbins* (July 1, 1993), Ill. PCB Nos. 93—52, 93—54 (consolidated), *aff'd on other grounds Daly v. Pollution Control Board* (1994), 264 Ill. App. 3d 968, 637 N.E.2d 1153, *appeal denied* (1994), 158 Ill. 2d 568, where the Board affirmed a village's decision granting a second siting request while the applicant's first request was still pending, indicates that the Board does not find the practice objectionable.

We decline to recognize an additional jurisdictional requirement where one was not provided by the controlling legislation. (See 415 ILCS 5/39.2(a) through (e) (West 1992) (listing the factors necessary to initiate the siting approval process, *e.g.*, providing notice of the request, filing the request with the local governing body, receiving written comment and developing a record of the proceeding).) Accordingly, we hold that Summit had jurisdiction to consider and approve WSREC's 1993 application.

Petitioners next argue the Board erred in finding that the proposed facility was necessary. On review, we are to determine whether the Board's decision is against the manifest weight of the evidence. (*Daly v. Pollution Control Board* (1994), 264 Ill. App. 3d 968, 637 N.E.2d 1153.) That a different conclusion may be reasonable is insufficient; the opposite conclusion must be clearly evident, plain or indisputable. *Wabash & Lawrence Counties Taxpayers & Water Drinkers Association v. Pollution Control Board* (1990), 198 Ill. App. 3d 388, 392, 555 N.E.2d 1081.

Petitioners attack the Board's decision, arguing: (1) Summit's failure to include in the hearing record two reports it relied upon prevented the Board from performing a meaningful review; (2) the data and reports Summit relied upon were outdated and inaccurate; (3) Summit failed to consider the effect of alternative waste disposal means; and (4) Summit failed to consider the effect of the Public Utilities Act (220 ILCS 5/8—403.1 (West 1992)).

■ In preparing and submitting the record of the proceedings, Summit failed to include two of the five reports it claimed supported its finding of necessity. Petitioners contend this omission "tainted" the Board's decision, although in rendering its decision the Board found "that there was sufficient support in the record for the Village to reach its decision exclusive of these two studies."

The missing reports did not contain evidence suggesting that the proposed incinerator was unnecessary and were largely duplicative of the reports before the Board. It seems, then, that petitioners are protesting the fact the Board did not consider additional or cumulative evidence supporting a finding of necessity. Petitioners cite *Clutts v. Beasley* (1989), 185 Ill. App. 3d 543, 545, 541 N.E.2d 844, as a case which "emphasizes the importance of a complete record." *Clutts* does not hold that the record before the Board must be identical to that considered by the village. Rather, the court held that "so long as the decision is in writing, and *a record* has been made showing the basis for the decision, neither a detailed statement finding specific facts, nor a detailed explanation of the relationship between the facts, the criteria, and the conclusions is necessary." (Emphasis added.) (*Clutts*, 185 Ill. App. 3d at 545.) The court found further that the purpose of these criteria was to impose standards, so that the decision of the Board to approve or deny operation of a proposed facility "is made with guidance, rather than arbitrarily or by whim." (*Clutts*, 185 Ill. App. 3d at 545.) Since the omission of two largely cumulative reports, relied on to support Summit's finding of necessity, does not suggest the Board's decision was arbitrary, petitioners' argument is unpersuasive.

■ Petitioners next argue that the 1991 Northeastern Illinois Planning Commission (NIPC) report relied upon by Summit failed to provide an accurate picture of the area's present waste needs. The 1991 NIPC report forecasted the remaining life of 24 Illinois landfills to be 5.8 years. Petitioners assert Summit should have relied on the 1993 NIPC report, which surveyed the same landfills and predicted a life-span of 5.9 years. We reject the implication that a discrepancy in the stated life-span of approximately 30 days somehow impugns the Board's decision.

Petitioners argue relatedly that Summit's failure to consider the

impact of source reduction, recycling, and composting as alternative waste disposal means made the finding of necessity contrary to the weight of evidence. The record indicates that two environmental experts, one being WSREC's president, testified to the relationship between incineration and recycling and composting. Though, arguably, additional information on alternative methods of waste disposal should have been considered, petitioners did not present such information before Summit, and cannot argue now that Summit failed to adequately consider their impact. Further, Summit's written decision found that the facility was necessary even if there was an increase in recycling and composting of municipal waste. Accordingly, we believe that the record does not allow for the conclusion that Summit or the Board relied upon improper, dated or inaccurate evidence.

■ Petitioners' last challenge to the Board's necessity determination involves the Public Utilities Act. (220 ILCS 5/8—403.1 (West 1992).) This statute requires electric utilities to enter into long-term contracts for the purchase of electricity from qualified solid waste energy centers (WSREC), thus allowing such centers to realize a consistent profit. Absent the revenues guaranteed by the Public Utilities Act, petitioners contend the WSREC incinerator would not be profitable, and, therefore, there is no need for it to exist. "Necessary" under the statute has been found to mean "expedient," as well as "reasonably convenient" or "reasonably required by the waste needs of the area." (*Waste Management of Illinois, Inc. v. Pollution Control Board* (1992), 234 Ill. App. 3d 65, 69, 600 N.E.2d 55.) Petitioners cite no authority finding that necessity determinations are predicated on consideration of market forces, unaltered by governmental incentives or controls. In fact, there is no requirement that absolute necessity be shown, nor has profitability been held indispensable to a finding of necessity. Thus, while petitioners' market analysis is interesting, it certainly does not suggest that the Board's decision is contrary to the manifest weight of the evidence.

■ Petitioners next contend the Board erred because a portion of the proposed facility is located within the 100-year flood plain and WSREC failed to demonstrate that the site was flood-proofed. Section 39.2(a) states that "local siting approval shall be granted only if the proposed facility meets the following criteria: *** (iv) the facility is located outside the boundary of the 100 year flood plain or the site is flood-proofed." (415 ILCS 5/39.2 (a)(iv) (West 1992).) Summit's ordinance granting siting approval states that the WSREC facility "is designed to be flood-proofed." Summit based this determination on evidence in the record, including WSREC's submission of a storm water management plan that includes detention storage require-

ments, sewer design, soil erosion control, and construction plans establishing building elevations above the flood plain, which indicates that the site was capable of being flood-proofed. The Board found Summit's determination that the site is "designed" to be flood-proofed not against the manifest weight of the evidence. In reaching this decision, the Board relied on its earlier decision in *Daly v. Village of Robbins* (July 1, 1993), Ill. PCB Nos. 93—52, 93—54, which was subsequently upheld in this court. *Daly v. Pollution Control Board*, 264 Ill. App. 3d 968, 637 N.E.2d 1153.

*Daly* resolved the identical issue now raised by petitioners, holding that: "[t]here would be little point in taking detailed evidence on flood-proofing and specifically finding that the design meets flood-proofing requirements if the village did not intend it as a precondition. So we believe that by including the flood-proofing provision in the ordinance, the village board recognized that a condition precedent for site suitability is that the facility be flood-proofed." (*Daly*, 264 Ill. App. 3d at 974.) Section 39.2(a)(iv) is satisfied where the local authorities determine that a proposed facility is designed flood-proofed, and flood-proofing is a recognized precondition of ultimate site suitability.

■ Petitioners' final argument alleges the Board applied the incorrect standard in denying petitioners' motions to reconsider. Section 101.246(d) of the Administrative Code defines the scope of matters the Board must consider in ruling on motions to reconsider: "In ruling upon a motion under this Section, the Board will consider factors including, but not limited to, error in the decision and facts in the record which are overlooked." (35 Ill. Adm. Code § 101.246(d) (1994).) Petitioners claim that the Board improperly limited its review to "newly discovered evidence which was not available at the time of hearing, changes in the law or errors in the court's previous application of the existing law." (*Korogluyan v. Chicago Title & Trust Co.* (1992), 213 Ill. App. 3d 622, 627, 572 N.E.2d 1154.) However, the Board's order denying petitioners' motions to reconsider reads: "Neither motion for reconsideration presents the Board with new evidence, a change in the law, *or any other reason to conclude that the Board's May 5, 1994 decision was in error*." (Emphasis added.) As the Board's order makes clear, it applied the correct standard of review in ruling to deny petitioners' motions.

For the reasons set forth above, we affirm the Board's orders affirming the Village of Summit's decision granting WSREC siting approval and denying petitioners' motions for reconsideration.

Affirmed.

RIZZI and CERDA, JJ., concur.